No. 19,006.

MICHAEL J. BAUM, JR., ET AL. *v.* CITY AND COUNTY
OF DENVER, ET AL.

(363 P. [2d] 688)

Decided June 26, 1961. Rehearing denied July 17, 1961.

Messrs. LESLIE A. GROSS AND NATHAN LEE BAUM, for plaintiffs in error.

Mr. DONALD E. KELLEY, Mr. EARL T. THRASHER, Mr. HANS W. JOHNSON, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS writ of error is directed to a judgment of the district court of the City and County of Denver, dismissing an action attacking the validity of a Denver zoning ordinance. The parties appear here in the same order as in the trial court, and we shall refer to them as plaintiffs and defendants or by name.

Plaintiffs by their complaint sought "Injunction — Mandamus — Declaratory Judgment." They allege that they are owners of an entire city block of unimproved land in Denver, bounded on the west by South Sheridan Boulevard, east by Zenobia Street, on the north by West Wyoming Avenue, and on the south by West Arkansas Avenue, presently zoned as Residence 1, restricting the property involved to single family dwellings and attendant uses. They assert that the nature and character of South Sheridan Boulevard in the area of their property has changed from a quiet rural street to a principal commercial thoroughfare with a heavy flow of traffic; that the land in Denver fronting on South Sheridan Boulevard between West Louisiana and West Arizona Avenue is presently zoned for business and classified as B-2, and that lying immediately north thereof, extending from West Arizona Avenue to West Mississippi Avenue, the area is zoned for business and classified B-4; that the area immediately west of plaintiffs' property, in Jeffer-

son County, extending from West Louisiana Avenue to West Florida Avenue is zoned and classified to permit virtually all types of retail trades and businesses; that changes in the nature and character of the area have made it "undesirable, unfeasible and unrealistic" to construct single family residences or any other R-1 uses upon the property. Plaintiffs allege that the R-1 regulations applying to their land are not uniform with the B-2 and B-4 regulations which apply to the Denver land of similar nature to the north of plaintiffs' property, and with the business regulations which apply to the Jefferson County land to the west of said property.

It is contended that such lack of uniformity violates Sections 2 and 3 of the Denver charter amendment relating to zoning, which provides in part as follows:

"Section 2. * * * All such regulations shall be uniform for each class or kind of building throughout each district * * *."

And, "Section 3. *Purposes in View.* * * * Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the City and County of Denver."

Certain sections of the Zoning Ordinance are detailed in the complaint. Section 612.2-1 describes the R-1 District as composed of certin quiet, low-density residential areas of the city plus certain open areas where similar residential development appears likely to occur. The regulations for this district are designed to stabilize and protect the essential characteristics of the district, to promote and encourage a suitable environment for family life where children are members of most families and to prohibit all activities of a commercial nature except certain enumerated home occupations.

Section 612.9-1 describes the B-4 District as usually located in long narrow strips paralleling arterial high-

ways in the city and composed of certain land and structures used primarily to provide retailing and personal services of all kinds, including temporary housing, for non-residents of the district and transients using the main arterial highways along which the district is located, to provide business services, such as warehousing and business machine supply companies and to provide locations for certain limited industrial activities which require a higher degree of protection from external effects of uses than is afforded in the principal industrial districts.

Plaintiffs claim that their property exactly conforms to the ordinance description of the B-4 district and particularly that the property parallels an arterial highway, abuts residential districts, and is suitable to provide retail and personal service businesses to the residents of nearby areas.

Plaintiffs also contend that classification of their property as R-1 prohibits "Any uses, service or income to be derived from the property" and that such classification "is inimical to the public good, capricious and arbitrary, confiscatory and contrary to the provisions, intent and purposes of the charter of the City and County of Denver and the zoning ordinances enacted thereunder"; that "such regulations are tantamount to the taking of plaintiffs' property without due process of law and without compensation contrary to the provisions of the 5th and 14th Amendments to the Constitution of the United States and Article II, Sections 15 and 25 of the Constitution of the State of Colorado."

It is alleged that plaintiffs "propose to erect on their property a structure or structures suitable for use for business, commercial, office and associated recreational installations, together with certain transient residential accommodations such as a motor hotel" to be "of modern architectural design and of substantial sound construction" and that "it would enhance the appearance of the neighborhood, appreciate the value of surrounding prop-

erties, complement existing business uses, tend to improve business conditions generally and elevate the tax base of the City and County of Denver." That because of the present zoning and classification of their property as R-1 they have been unable to develop final plans and specifications for such proposed structure or structures; that they have made no application to the Zoning Administrator or the Chief Building Inspector for any permits or licenses for the reason that such applications would be futile under the present zoning, nor have they resorted to proceedings before the Denver Board of Adjustment for a variance or other relief, because said board has no power to authorize any uses of plaintiffs' property which is not a use by right as defined in the zoning ordinance.

It is alleged that the "continued refusal" of Denver and its officers "to authorize plaintiffs to develop their property for the purposes hereinabove specified seriously and irreparably injures and damages the plaintiffs" and that they have no plain, speedy or adequate remedy at law.

The defendants by answer put in issue every material allegation of the complaint.

Trial was to the court, and at the close of plaintiffs' case defendants orally moved for dismissal of the complaint. The motion was granted and judgment of dismissal entered. The trial court in its order of dismissal observed, inter alia:

"The proceedings here is not an attack on the zoning ordinance in its entirety but rather is an admission that everything necessary in the enactment of a valid ordinance was done in this case.

"It is a claim that the boundary line which the city council drew is wrong and plaintiffs are asking the court to sit as a legislative body to put the boundary line in a different place. For the court to interfere in this case would be in effect to have it sit as a zoning commission.

"The evidence shows that the property in question is a

square block, completely unimproved: On the north, south and west vacant unimproved property abuts, and on the east is a row of homes in which people are living. The question here seems to be whether this residence area can be reserved from the encroachment of business establishments.

"It is admitted that plaintiffs have made no application to the Zoning Administrator nor the Building Inspector nor to the Board of Adjustment for relief. It is clear as well they have made no application to the Denver City Council for relief."

The assignments of error present two specific questions for determination. The first, assigned as cross error by Denver on the court's refusal to dismiss the action on motion made before answer on the ground that the complaint itself was insufficient to invoke the jurisdiction of the court, relates to remedial law, and poses the question:

*Can a property owner, without exhausting available administrative remedies, challenge the constitutionality of a Zoning Ordinance classifying his property as R-1 and restricting the use thereof to single family residences?*

This question is answered in the affirmative.

Defendants contend that the specific remedies of injunction, mandamus and declaratory judgment are not available to plaintiffs. Their argument is grounded on the general rule requiring a party to exhaust available administrative remedies, it being admitted by the pleadings and established by the evidence that plaintiffs made no application for a building permit and did not apply to the Zoning Administrator for any appropriate and available relief afforded by the Zoning Ordinance.

The plaintiffs' contention is that the zoning ordinance results in a confiscatory reduction in the value of plaintiffs' property, prohibits the use thereof for business and commercial purposes, and prevents "any use, service or income to be derived from the property." This attack is

directed to the entire ordinance as it affects their property and not to any specific provision or provisions thereof. They contend that the ordinance, in effect, constitutes a present and continuing invasion of their property rights. Under the allegations of the complaint, jurisdiction of the court is clearly established. *Euclid v. Ambler Realty Company,* 272 U.S. 365, 71 L. Ed. 303, 47 Sup. Ct. 114. See also, *Braden v. Much,* 403 Ill. 507, 87 N.E. (2d) 620; *Dowsey v. Kensington,* 257 N.Y. 221, 177 N.E. 427.

Plaintiffs' recourse to the court, however, imposes upon them the burden of proving the allegations of their complaint, which, as condensed in their summary of argument, are: "The residential zoning classification applicable to plaintiffs' land is invalid because it prevents logical development and precludes the realization of any reasonable use, service or income from the property. The classification is not founded on a legitimate exercise of the police powers of the city, bears no relation to the public interest, benefits no one and is unfair and discriminatory." This contention poses the following question:

*Under the facts and circumstances established, is the Denver Zoning Ordinance classification of plaintiffs' property as R-1 a valid exercise of the police powers of the city?*

The question is answered in the affirmative.

█ A zoning ordinance, like other legislative enactments, is presumed to be valid, and one assailing it bears the burden of overcoming that presumption, and courts indulge every intendment in favor of its validity.

█ Heretofore this court has not stated or pronounced any definite or exact standards for determining the validity of a zoning ordinance. However with respect to other municipal legislation, it has repeatedly been stated that the invalidity of an ordinance must be established beyond a reasonable doubt. *Consumers' League of Colorado v. Colorado & Southern Railway Co., et al.,*

53 Colo. 54, 125 Pac. 577; *People ex rel. Rogers v. Letford, et al.,* 102 Colo. 284, 79 P. (2d) 274; *Mosko v. Dunbar,* 135 Colo. 172, 309 P. (2d) 581. The most recent pronouncement occurs in *Flank Company v. Tennessee Company,* 141 Colo. 554, 562, 349 P. (2d) 1005, where it is said:

"It is fundamental that legislation is entitled to a presumption of constitutionality and that the burden is on the person alleging invalidity to prove it beyond a reasonable doubt. * * *"

The rule or standard of reasonable doubt was adopted by New York in *Fra-Nat Builders, Inc. v. Town of Oyster Bay,* 183 N.Y.S. (2d) 830, with sound reasons as noted therein. The holding of this court in other actions involving municipal ordinances applies to zoning as well.

To make out a case it was incumbent upon plaintiffs to establish that as applied to their property the ordinance is confiscatory and deprives them of the use of their land without due process of law. Proof offered by plaintiffs comprised four categories:

1. The effect of the ordinance to the value, marketability and use of plaintiffs' land.

2. The suitability of plaintiffs' property for single family homes.

3. The zoning clasification and use of similar and adjacent property fronting South Sheridan Boulevard.

4. The nature and character of the neighborhood.

The evidence, however, falls far short of establishing invalidity beyond a reasonable doubt or even by a preponderance. For example, on the question of value, plaintiffs' principal evidence stressed the disparity between the market value of the land for construction of single family homes and its value as a unit for business or commercial uses. As to the former, plaintiffs' witnesses stated a low figure of $24,500.00 and a high of $28,000.00. The market value for commercial purposes was said to be between $100,000.00 and $125,000.00. But

the evidence also supports the following specific finding of the court:

"The Plaintiffs claim that the ordinance in its application is so unreasonable, so confiscatory as to be unconstitutional; but a review of the testimony will show that Mr. Michael Baum, one of the plaintiffs, has revealed in his testimony that the property in question bought in 1952 for $7800.00 is now worth $28,000.00; and the court cannot see that even though it would be worth more if made available for business use it would necessarily make the present classification of the property confiscatory or unconstitutional."

Accepting as a fact that land anywhere available for development for commercial purposes has a higher potential value than land restricted to residential use, the effect of the ordinance on the value of plaintiffs' land for one use as compared to another is not the controlling or decisive factor. We so held in *Colby, et al. v. Board of Adjustment of Denver, et al.,* 81 Colo. 344, 255 Pac. 443, and in *City of Colorado Springs, et al. v. Miller,* 95 Colo. 337, 36 P. (2d) 161. In the Colby case, the court, in citing from *Hadacheck v. Los Angeles,* 239 U.S. 394, 60 L. Ed. 348, 36 Sup. Ct. 143, and from *Euclid v. Ambler Realty Co.,* supra., said:

" * * * we must deny ourselves copious quotations from the opinions, and suggest that they both be examined for the reasons advanced in support of these two decisions of the Supreme Court of the United States. We are following these precedents. * * * "

In the Colorado Springs-Miller case it was contended that the residential zoning ordinance as applied to the subject property was confiscatory.

The exact money values of the property for business and commercial uses is not stated in the opinion, but the court said:

"The claim that the application of the ordinance to Miller's property would amount to confiscation and deprive him thereof without due process of law is with-

out merit. The evidence settles itself to one proposition, that is, the only loss suffered by Miller is in his being deprived of the chance to profit by the increased value of his property for business uses. To him the ordinance is satisfactory if it deprives others of the same opportunity and thereby enhances his values, but wrong, if he is not allowed to be made the exception. One who owns, or one who acquires, property, must be ever mindful of the right of the state or city to exercise its legislative authority for the common good. The ordinance is not unreasonable as it relates to the property involved."

In *Hoskinson v. City of Arvada, et al.,* 136 Colo. 450, 319 P. (2d) 1090, a restrictive residential zoning ordinance as applied to particular land was attacked on the ground that it was discriminatory and deprived the owner "of beneficial use of his land by precluding the only use to which his property is reasonably adapted." The value of property for business or commercial uses — shopping center, supermarket, drug store, lunch room and various stores — greatly exceeded its value for single family residences. The court expressly approved the holding of *Colorado Springs v. Miller,* supra. See also *Clark v. City of Boulder,* No. 19,531, decided May 22, 1961.

That the R-1 zoning of plaintiffs' property did not result in *confiscatory depreciation of its value* was established by Baum's testimony. The value of the property as so zoned has increased from $8,728.00 in 1952 to $28,000.00 in 1959 — an increase of $19,272.00. Plaintiffs' conclusion that such substantial *increase in value* is nevertheless confiscatory does violence to the rules of logic and finds little support in legal principles.

That the highest and most lucrative use of their property is for busines or commercial purposes, and that the land is suitable for such development, does not entitle plaintiffs to a holding that R-1 classification of their land is invalid as an improper exercise of the police power.

The Colby, Colorado Springs and Hoskinson cases clearly establish the principle that a zoning ordinance is not unconstitutional because it prohibits a landowner from using or developing his land in the most profitable manner. Limitation of use is an essential and fundamental purpose of all zoning.

Since the Euclid decision courts have held that the due process and just compensation clauses of the Federal and State constitutions do not require that a landowner be permitted to make the best, maximum or most profitable use of his property. *Euclid v. Ambler,* supra; *Lockard v. Los Angeles,* 33 Cal. (2d) 453, 202 P. (2d) 38; *Fra-Nat Builders, Inc. v. Town of Oyster Bay,* supra; *Spector v. Building Inspector of Milton,* 250 Mass. 63, 145 N.E. 265; *Appeal of Dunlap, et al.,* 87 A. (2d) 299, 370 Pa. 31. See also cases cited in 86 A.L.R. 659 and 117 A.L.R. 1117.

On the matter of the suitability of the subject land for single family residences — plaintiffs offered in support of their contention that they are "precluded from the realization of any reasonable use or income from the property" evidence of the impossibility of obtaining public financing — F.H.A. or V.A. loans — for single family residences fronting South Sheridan Boulevard. Two expert witnesses testified that such financing was not available for property similar to plaintiffs' and that the disqualifying factor was the facing of homes on a business thoroughfare such as South Sheridan Boulevard. Both witnesses testified that public financing could be obtained for the east half of the property — that is the seven lots or sites that do not front South Sheridan Boulevard. One of the plaintiffs testified that they had never attempted to get public financing for their property and that they did not at any time intend to use or develop their land for single family residences. No witness testified that private financing was not available for residential construction on this or similar property. One plaintiff admitted that private financing was

readily available for their property, but that it was too costly and would not yield an adequate or satisfactory profit from their investment.

One witness testified that it would be possible and feasible to build single family residences on property similar to plaintiffs' in such manner as to avoid facing them on commercial streets; that houses could be faced either north or south, and that in several areas near plaintiffs' land houses are so located. A large aerial photograph (Defendants' Exhibit 6) shows clearly that on three east-west thoroughfares in the area immediately north of plaintiffs' property all of the houses face either north or south.

Three expert witnesses testified in effect that residential uses or development of plaintiffs' land was "poor," "undesirable," "not feasible" or "not the best use." One expert testified expressly that the east half of plaintiffs' property was suitable for single family residences. None of the experts testified that plaintiffs' property *could not be used or developed for single family residences*. All such testimony may be summed up as showing nothing more than that residential use or development of plaintiffs' land is undesirable because business or commercial uses or development thereof *would be better, best or more profitable*.

Thus the plaintiffs failed to prove, as they must by clear and convincing proof, that their land is not suitable for single family homes.

 The generally accepted test of reasonableness which any zoning ordinance must withstand is well stated in 101 C.J.S. 809, Zoning, section 68:

"Zoning ordinances or regulations will not be declared unreasonable and arbitrary unless they are found to be plainly and palpably so, or unless it is shown that if the ordinance is enforced the consequent restrictions will preclude the use of property for any purpose to which it is reasonably adapted. Accordingly, where the

reasonableness of a zoning ordinance is fairly debatable, it must be upheld."

The cases supporting this test are innumerable. One of the leading cases on the subject is *Arverne Bay Construction Co. v. Thatcher, et al.,* 278 N.Y. 222, 15 N.E. (2d) 587, where the rule is stated as follows:

"To sustain an attack upon the validity of the ordinance an aggrieved property owner must show that if the ordinance is enforced the subsequent restrictions upon his property preclude its use for any purpose to which it is reasonably adapted."

Passing to the third category of proof offered, plaintiffs contend that R-1 classification of their land is unreasonable and discriminatory because similar and adjacent property fronting South Sheridan Boulevard is zoned and used for business or commercial purposes. Testimony, official zone maps, and other exhibits indicate that certain adjacent Denver land is zoned B-2 and B-4 and is used for business or commercial purposes. The half block immediately north of plaintiffs' land is zoned R-1, residences exist on the east half thereof, and the west half fronting South Sheridan Boulevard is vacant. Immediately north of this intervening R-1 zone, the block between Louisiana and Arizona Avenues is zoned B-2, and to the north the block between Arizona and Mississippi Avenues is zoned B-4. Both of these business zones occupy the west half of the block fronting on South Sheridan Boulevard. Two blocks immediately south of plaintiffs' land and fronting South Sheridan Boulevard are zoned R-1, but are vacant and unimproved. For many blocks both north and south of plaintiffs' property Denver land fronting on South Sheridan Boulevard is zoned R-1 except the two blocks between Louisiana and Mississippi Avenues zoned B-2 and B-4.

Sheridan Boulevard forms the western boundary between Denver and Jefferson County. Testimony and an official zone map indicates that Jefferson County land

fronting South Sheridan Boulevard both north and south of plaintiffs' land is zoned residential-commercial or commercial, and is generally used for business or commercial purposes. One full block of Jefferson County land, almost directly west of plaintiffs' land, is zoned for commercial uses and will be occupied by a large supermarket.

Sheridan Boulevard is a principal thoroughfare carrying a heavy flow of traffic and is a main traffic artery of both Denver and Jefferson County. In an almost identical situation involving substantially the same arguments as urged here by plaintiffs, the Supreme Court of Michigan said in *Robinson v. City of Bloomfield Hills,* 350 Mich. 425, 86 N.W. (2d) 166:

"This court is not equipped to zone particular parcels of land. We do not see the land, we do not see the community, we do not grapple with its day-to-day problems. When we interpose with our writ and command, for example, that a certain tract on Woodward avenue be turned over to commercial pursuits, the owners of the tract across the street are before us for similar dispensation the next day, and the areas north and south the day after. Thus we assume the zoning function. Their argument is cogent and not difficult to follow: What is sauce for the goose is sauce for the gander. So it is. But if the childish jingle is to be accorded the dignity of a legal axiom, if it is to replace, at least in these chambers, the deliberations of the legislative body, we would do well to re-examine our appellate function.

"The function of the courts, with respect to these cases lies largely in two broad areas: (a) has the legislative body the authority to act? (b) have the requirements of administrative due process been observed with respect to adoption, interpresentation [sic], and administration of the ordinance in question? * * *

"Tested by these established principles it is · clear beyond question that it lies within the competence of the city * * * to plan its future growth and develop-

ment, that its legislative body had authority to act, and that, so far as here questioned, the requirements of administrative and procedural due process have been observed. * * * Given these indispensable requirements, such factors as the relative values of competing uses, and the proximity of non-conforming uses, assume their rightful places as matters primarily for legislative concern, unless, as noted, we have patently a capricious and irrational invasion of property, the merits undebatable by reasonable men, the action indefensible to any save those whose minds have been made incandescent by partisan zeal or pursuit of gain. The prohibitory interposition of the courts, upon this record, is not warranted."

As to the nature and character of the neighborhood — the record shows the area surrounding plaintiffs' property is more residential than commercial. With the exceptions of the B-2 and B-4 blocks north of plaintiffs' land fronting on South Sheridan Boulevard, the entire area surrounding plaintiffs' property is predominately residential. The Denver land east of plaintiffs' property for more than *twenty-six blocks* is occupied almost entirely by single family dwellings. The same is true of the Denver land south of plaintiffs' property and further north on Sheridan beyond the business areas adjacent to the subject land. With the exception of certain business districts fronting South Sheridan Boulevard, the use of the land is generally residential and it is occupied predominantly by single family dwellings. Since 1952 this area has been developed for residential purposes, such development being both rapid and sustained. Present and prospective development of the area is generally residential and predominately of single family units.

The record indicates that development and use of plaintiffs' property for business purposes would *affect adversely* the surrounding residential property. Commercial or business uses of plaintiffs' land would "hurt" or "cause injury" to the land south thereof, "would not

enhance its value," "would not do it any good" or "might hurt a little bit."

Do the facts and circumstances relating to adjacent uses, the nature of South Sheridan Boulevard, and of the neighborhood and the surrounding areas, require a determination that R-1 zoning of plaintiffs' property is unconstitutional? We think not.

Although classification and use of adjacent or nearby property is a factor to be considered in determining the validity of a restrictive residential zoning ordinance, the fact that adjacent or nearby land is zoned and used for business or commercial purposes does not make residential zoning invalid or make the residential restrictions discriminatory. *Fra-Nat Builders, Inc. v. Town of Oyster Bay,* supra; *Price v. Schwafel,* 92 C.A. (2d) 77, 206 P. (2d) 683; *Williams v. Village of Schiller Park,* 9 Ill. (2d) 596, 138 N.E. (2d) 500; *City of Baltimore v. Cohn,* 204 Md. 523, 105 A. (2d) 482; *Mundelein Estates v. Village of Mundelein,* 409 Ill. 291, 99 N.E. (2d) 144; *Schloemer v. City of Louisville,* 298 Ky. 286, 182 S.W. (2d) 782; *Lewis v. District of Columbia, et al.,* 89 U.S. App. (D.C.) 72, 190 F. (2d) 25; *Donovan v. City of Santa Monica,* 88 C.A. (2d) 386, 199 P. (2d) 51.

Zoning necessarily requires the establishment of boundary lines between different districts or use classifications. Well reasoned cases from many jurisdictions support the principle that a restrictive residential zoning ordinance is not invalid merely because one side of a street or highway is zoned for residential and the other side for commercial uses. We cite the following cases in which the facts and circumstances therein established are similar to the facts and circumstances of the instant case. *Lewis v. District of Columbia,* supra; *Donovan v. City of Santa Monica,* supra; *Mundelein Estates v. Village of Mundelein,* supra; *Wilkins v. City of San Bernardino,* 29 Cal. (2d) 332, 175 P. (2d) 542; *Schloemer v. City of Louisville,* supra; *City of Miami Beach v. Ocean & Inland Co.,* 147 Fla. 480, 3 So. (2d) 364; *Zahn v.*

*Board of Public Works of the City of Los Angeles,* 195 Cal. 497, 234 Pac. 388.

All of the cases cited involved main arterial thoroughfares or highways with heavy vehicular traffic constituting boundary lines between residential and business districts, and state the basic rules of law applicable to the facts and circumstances established here. The selection of a boundary line between use districts is a legislative function, peculiarly within the power of the municipal legislative body. As was said in *Colorado Springs v. Miller,* supra, courts should tread lightly in this field and then only where the actions of the zoning authority are so unreasonable, arbitrary or unjustifiable as to amount to confiscation of property.

Among the most cogent pronouncements to be found in the cases dealing with similar problems is the language in *Robinson v. City of Bloomfield Hills,* supra:

"It is argued, also, that nearby is found an office building (McManus, John & Adams, at the northwest corner of Woodward avenue and West Long Lake road), and that across the street is found another similar rest home. These differences are bound to occur in any zoning plan. Somewhere one zone must end and another start. There will always be peripheral problems. But as the Supreme Court of Illinois expressed it in a recent 'across-the-street' case (Wesemann v. Village of La Grange Park, 407 Ill. 81, 87, 88, 94 N.E. 2d 904, 908):

" ' * * * It is the province of the municipal body to draw the line of demarcation as to the use and purpose to which property shall be assigned or placed, and it is neither the province nor duty of courts to interfere with the discretion with which such bodies are invested, except where there is a clear showing of an abuse of that discretion, which is not the case where the question is merely debatable. * * *

" 'The fixing of zoning lines is a matter of legislative discretion and necesarily results in a different clasification of uses on either side of the line. This does not

render limitations on use of property near the boundary line in a more restricted district unreasonable or invalid.'

\* \* \*

"We are brought, then, to the merits of the zoning scheme itself. In view of the frequency with which zoning cases are now appearing before this Court, we deem it expedient to point out again, in terms not susceptible of misconstruction, a fundamental principle: this Court does not sit as a super-zoning commission. Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny, the degree to which the industrial may have precedence over the residential, and the areas carved out of each to be devoted to commercial pursuits. With the wisdom or lack of wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: It is not our function to approve the ordinance before us as to wisdom or desirability. For alleged abuses involving such factors the remedy is the ballot box, not the courts. We do not substitute our judgment for that of the legislative body charged with the duty and responsibility in the premises. As Willoughby phrased it in his treatrise, Constitution of the United States (2nd ed. 1929, p. 321): 'The Constitutional power of a law-making body to legislate in the premises being granted, the wisdom or expediency of the manner in which that power is exercised is not properly subject to judicial criticism or control.' \* \* \* "

Here the burden rested upon plaintiffs to establish beyond a reasonable doubt that the ordinance in question deprives them of their property without due process of law, and that it bears no substantial relation to the public health, safety or general welfare. This they have failed to do.

Accordingly, the judgment is affirmed.

MR. JUSTICE MOORE dissents.

MR. JUSTICE DOYLE and MR. JUSTICE MCWILLIAMS not participating.