## No. 26445

**Ford Leasing Development Company v. Board of County Commissioners of the County of Jefferson**
(528 P.2d 237)

Decided November 11, 1974. Rehearing denied December 9, 1974.

420

Bradley, Campbell & Carney, Leo N. Bradley, Victor F. Boog, for plaintiff-appellant.

Patrick R. Mahan, County Attorney, Gail E. Shields, Assistant, for defendant-appellee.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

We will refer to plaintiff-appellant as Ford and the Board of County Commissioners of Jefferson County as the Board. The latter denied Ford's application for rezoning. The district court upheld that decision. This appeal is from that judgment. We affirm.

## I.

Ford's predecessor in title filed an application for rezoning from A-2 (Agricultural Two District) to P-D (Planned Development District) for approximately 23 acres located at the southwest corner of West Hampden Avenue and South Wadsworth Boulevard in Jefferson County. Ford was to develop and occupy the land. The plan was submitted first to the Jefferson County (Jeffco) planning commission. It approved the proposed planned development, subject to 17 restrictive recommendations of which, according to the record, Ford complied with only five. The Board denied the change.

Pursuant to C.R.C.P. 106(a)(4), review was sought in district court. While the matter was still pending, Ford acquired title to the property and was substituted as plaintiff.

A two-pronged challenge to the Board's action was launched in the district court. In the Rule 106 certiorari

proceeding, it was claimed that the Board was estopped to deny the application because Ford had complied with recommendations of the planning commission on which its approval was predicated. As a second string to this bow Ford claimed that the Board was arbitrary, capricious and showed an abuse of discretion. A second claim sought a declaratory judgment that the existing zoning as applied to the property was an unconstitutional confiscation.

Trial was held in two phases. On certiorari the lower court reviewed only the record at the hearing before the Board. The constitutional question was accorded a complete trial *de novo*. At its conclusion, the district court affirmed the Board and held the zoning ordinance constitutional.

## II.

The subject property is zoned A-2 (agricultural). The area at the time of the original zoning was generally undeveloped. Medium and high density residences have since been built, as have restricted commercial businesses.

The most extensive land use in the area is the 300 acre Academy Office Park, a multi-complex commercial use. However, that entire area is protected by extremely strict covenants, voluntarily imposed by the builder, which last until the year 2000. They are designed specifically to preserve an open green space motif. The Jefferson County Comprehensive Future Land Use Plan recommends low density residential and light restricted commercial uses for the area.

The planned development submitted by the Ford application would be a concentrated commercial and medium to high density residential use. An auto dealership would cover about eight acres. It would be buffered from the surrounding community by townhouses, which would cover approximately 13.5 acres. The entire combination development would be artfully landscaped. Ford argued that a heavy commercial use, planned as it is to blend with the area, would not be out of place. The Board came to a different conclusion.

## III.

■■ We take up first the question of whether the Board is bound to grant the change. Ford cites *Dillon Companies, Inc.*

*v. Boulder,* 183 Colo. 117, 515 P.2d 627 (1973), for the proposition that the Board is estopped to deny its application for rezoning. We do not read *Dillon* as being that broad. In *Dillon* there were no findings of fact to support the city council's decision. *Dillon* also pointed out that a planned development application must meet all standards, procedures and conditions of a planned development ordinance.

In addition to not implementing 12 of the planning commission's recommendations, Ford did not strictly comply with the Jeffco ordinance. Section 39-B and section 39-C-1 state in part that a planned development must be under unified control. The record reveals that *Ford* would handle the auto dealership and *Broker House,* which had a contract to purchase the residential site, would develop and sell the townhouses. That is separate, not unified, control.

Moreover, section 39-C-2 states in part that P-D parking, height, setback and area regulations shall be compatible with the surrounding development. The Board made a specific finding that the Ford proposal was "incompatible with the surrounding land uses at the present time." *See Moore v. City of Boulder,* 29 Colo. App. 248, 484 P.2d 134 (1971).

Ford argues additionally that the Jeffco ordinance mandates final compliance regulations and contends that the Board having failed to impose any final regulations, there was nothing remaining to satisfy. The resulting conclusion advanced is that Ford has met the county conditions by default and under the *Dillon* rule became entitled to the rezoning.

Ford's thesis would require that any planned development proposal must automatically be granted by the Board, leaving to it only the power to issue final regulations. Then—merely by compliance—the plan would pass, *regardless* of whether the Board wants the design. Such bootstrapping is clearly obnoxious to the essence of planned development zoning. Planned development is not a catch-all. It is not supposed to inject in a neighborhood a use which would otherwise not be allowed. It should not usurp the discretionary function of the Board. Since Ford's application was denied no final regulations were necessary. This would be meaningless rhetoric, for there was nothing to comply with.

■ At the conclusion of extensive hearings, Ford requested the Board to inform it of whatever additional requirements and regulations were necessary in order to approve the application. This the Board refused to do. To act otherwise would be patent contract zoning, a concept held illegal in most states as an *ultra vires* bargaining away of the police power. 1 *R. Anderson, American Law of Zoning* § § 8.20-1.

■ Thus, looking at the Jeffco statute as a whole, we cannot say that the rationale of *Dillon* applies in this case. The Board was not estopped to deny Ford its application for rezoning.

On the other phase of the certiorari review, Ford asserts that the district court erred in upholding the Board's arbitrary and capricious denial of the requested rezoning.

■ In order for a court to set aside a decision of an administrative body on certiorari review, there must be *no* competent evidence to support the decision. *Board of County Commissioners v. Simmons,* 177 Colo. 347, 494 P.2d 85 (1972); *Marker v. Colorado Springs,* 138 Colo. 485, 336 P.2d 305 (1959). The reviewing court is limited to what appeared of record, which in this case was substantial. It is obvious from the record that Ford has tried to propose an innovative planned development design. It is equally obvious that many others contest the feasibility of such a plan.

■ This Court will not sit as a "super-zoning commission." *Garrett v. City of Littleton,* 177 Colo. 167, 493 P.2d 370 (1972); *Baum v. Denver,* 147 Colo. 104, 363 P.2d 688 (1961). The question whether the proposed planned development was compatible with the surrounding development was fairly debatable. *Radice v. New York,* 264 U.S. 292, 44 S.Ct. 325, 68 L.Ed. 690 (1923); *Simmons, supra.* Consequently, we cannot say that the zoning decision of the Board was supported by *no* competent evidence. In such a state of the record, it cannot be said there was a clear abuse of discretion.

### IV.

Ford also asked for a declaratory judgment that the zoning ordinance as applied to its property is unconstitutional.

426

Zoning ordinances—like other legislative enactments —are presumed valid. Ford has the burden of proving beyond a reasonable doubt that it is invalid. *Simmons, supra; Baum, supra.*

There are two methods to establish that a zoning ordinance is unconstitutional. First, it may be shown it is not substantially related to the public health, safety, or welfare. *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *City of Englewood v. Apostolic Christian Church,* 146 Colo. 374, 362 P.2d 172 (1961). Relating to this, the Board made a specific finding that the "*rezoning* [was] not in the best interest of the health, safety, welfare and morals of the citizens of Jefferson County." As noted above, contentions regarding the Board's actions were fairly debatable. Thus, Ford has not met its burden of proof here.

The second method is to show that the zoning ordinance precludes the use of Ford's property for *any* reasonable purpose. *Village of Euclid, supra; Madis v. Higginson,* 164 Colo. 320, 434 P.2d 705 (1967); *Baum, supra.* A trial *de novo* was held on this point. Considerable evidence and many witnesses were produced for both sides. The answers were far from uniform. Still, we do not feel that there has been a confiscatory taking of property from Ford without due process of law. True, whatever use is available is perhaps not the highest and best use. But that has never been the test. *Madis, supra.* We have held that in order to obtain rezoning to permit a use which the applicant seeks, he must prove that it is not possible to use and develop the property for *any* other use enumerated in the existing zoning. *Garrett, supra; Wright v. Littleton,* 174 Colo. 318, 483 P.2d 953 (1971); *Baum, supra.* The record is replete with contrasts and contradictions on this point. We cannot say as a matter of law that Ford met its burden of proof beyond a reasonable doubt.

Similarly, just because the land is unsuited for agricultural use does not mean the applicants can skip other

intermediate zones up to planned development—the most advantageous for its purpose. Ford presented no evidence that there were no reasonable uses in approximately 8 intervening zones. Such proof is of crucial importance as a prerequisite that property is unconstitutionally confiscated. *Simmons, supra; Garrett, supra.* Without it, Ford failed to meet its high burden of proof.

 Upon finding that the landowners were not deprived of *any* reasonable use of their property by the zoning ordinance, the district court was perfectly justified in holding that the ordinance as applied to the property in question was constitutional.

 We note if there is hardship here it is self-inflicted. The application had been denied by the Board when Ford *thereafter* purchased the property and took up the burden of appeal through the courts. Thus, it had full and complete notice and knowledge. *Accord Nopro Co. v. Cherry Hills Village,* 180 Colo. 217, 504 P.2d 344 (1972); *Madis, supra.*

Judgment affirmed.