**WESTERN PAVING CONSTRUCTION CO., a Colorado corporation,**
**Plaintiff-Appellant,**

v.

**JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS,**
**Defendant-Appellee.**

No. 83CA0524.

Colorado Court of Appeals,
Div. II.

June 7, 1984.

As Modified on Denial of Rehearing
July 26, 1984.

Caplan & Earnest, Gerald A. Caplan, Richard E. Bump, Boulder, for plaintiff-appellant.

Patrick R. Mahan, County Atty., H. Lawrence Hoyt, Asst. County Atty., Golden, for defendant-appellee.

VAN CISE, Judge.

Plaintiff, Western Paving Construction Co. (Western), appeals the district court's dismissal of its action pertaining to the denial of its rezoning application by the defendant, Jefferson County Board of County Commissioners. We affirm.

In 1972, Western acquired real property in an area in unincorporated Jefferson County commonly known as North Table Mountain. It was zoned Agriculture–2 (A–2) and Residential–1 (R–1). Mining was allowed in these zoning districts provided that a special exception permit was obtained from the county board of adjustment. Western obtained such a permit that was valid until November 26, 1978. Subsequently, the Colorado Open Mining Land Reclamation Act of 1973, § 34–32–101, et seq., C.R.S., was enacted, and Western sought and obtained a state open mining permit that was valid until June 30, 1980.

The general assembly also enacted in 1973 a statute concerned with the preservation of mineral deposits, § 34-1-301, et seq., C.R.S. (the Preservation Act). Under this statute, each of the populous counties of the state is required to study the commercial mineral deposits within its jurisdiction and to develop and adopt a master plan for their extraction. In 1977 the county planning commission and the county commissioners approved a mineral extraction policy plan for Jefferson County (MEPP).

In 1975, prompted by the Preservation Act, the county commissioners amended the zoning resolution to create a new mineral conservation zoning district (M–C), with mining designated as a conditional use therein. The board of adjustment had authority to grant special exceptions to allow mining.

In November 1978, a few days before the expiration of its special exception permit, Western submitted an application to have its property rezoned from A–2 and R–1 to M–C in order to be able to continue its mining operation. Following numerous meetings with county officials, and at their suggestions, Western withdrew its application for rezoning to M–C and submitted an application for rezoning to Planned Development Zone District (P–D). The provisions relating to the P–D district had been amended in 1979 to incorporate the MEPP requirements.

The planning commission held hearings on Western's application for rezoning to P–D and recommended approval. Thereafter, several hearings were held on the matter by the county commissioners. On December 8, 1980, they denied the application, finding in pertinent part:

"3. That the 1974 Golden/Ralston Area Future Land Use Plan component of the Jefferson County Comprehensive Plan recommends agricultural and conservation uses for this general area and the proposed rezoning is not in conformance with this recommendation.

"4. That the proposed rezoning has a low suitability rating for truck traffic safety under the criteria of the Mineral Extraction Policy Plan component of the Jefferson County Comprehensive Plan and therefore is not in conformance with its recommendations on this major issue area.

"5. That the proposed land use is not compatible with allowable and existing land uses in the surrounding area in all directions due to the proposed truck hauling on Highway 93. Highway 93 is a narrow, winding road through the foothills. It is operating at or beyond its capacity currently and has a high number of traffic hazard problems which result in a great number of traffic accidents.

"This proposal, without any limitation upon the maximum number of truck trips generated by the proposed operation, will substantially increase traffic upon this highway and significantly deteriorate the existing traffic safety situation. In addition, this truck traffic will cause an unwarranted increase in the noise and dust to which residents of the residential areas adjacent to Highway 93 in the north part of the City of Golden will be subjected.

"6. That the proposed by-pass on Highway 93, which would take this truck traffic west of the City of Golden and away from existing residential areas and which, if properly designed, would substantially mitigate the hazardous traffic situation on the existing road, is still in the preliminary discussion stage and the necessary steps towards making it a reality have not yet been taken.

"7. That commercial mineral deposits of good quality exist upon the subject property.

"8. That for the above stated and other reasons, the applied for rezoning is not in the best interest of the health, safety, morals, convenience, order, prosperity and welfare of the citizens of Jefferson County."

Western then filed this suit seeking C.R. C.P. 106(a)(4) review, declaratory and injunctive relief pursuant to C.R.C.P. 57, and for damages under 42 U.S.C. § 1983 be-

cause of alleged violation of its due process rights.

In July 1981, the district court dismissed Western's § 1983 claim, finding that Western's exclusive means of redress for denial of a rezoning application were under C.R. C.P. 106 and 57. Following a hearing in December 1982, the entire complaint was dismissed. The court found that the evidence supported the denial, that traffic considerations were proper bases for denial, that the standards used were adequate, that the zoning regulations did not conflict with state statutes, and that this result was consistent with § 34–1–305(5), C.R.S. This appeal followed.

## I.

Western contends that there is no competent evidence in the record which justifies the commissioners' decision in denying its application for rezoning.

## A.

Western first argues that the county commissioners erroneously found the proposed rezoning not to be in conformance with the 1974 Golden/Ralston Area Future Land Use Plan. Western asserts that this land use plan was superseded by the 1977 MEPP.

■ We find nothing in the record indicating this. On the contrary, the MEPP states in its "Intent of Plan" section: "[T]his Plan must be coordinated with other land use plans for the County ...."

## B.

Western further argues that there is no competent evidence supporting denial based on traffic concerns. We do not agree.

■ Both the county zoning resolution and MEPP state that one of their goals is to minimize adverse traffic conditions. Policy 13.1 of MEPP states:

"To the greatest extent possible, mining operations should be located in areas where the surrounding road network can accommodate heavy trucks and where the surrounding road network is not exceeding carrying capacity."

■ The bulk of the evidence concerning the adverse impacts of traffic came from concerned citizens. Western infers that citizens' testimony cannot be believed when professional planners and engineers found that the road could physically handle the gravel trucks. We find this argument to be without merit. Section 30–28–116, C.R.S. (1977 Repl. Vol. 12) requires public notice and a public hearing to be held on a proposed rezoning. It logically follows that the opinions expressed at the public hearing by ordinary citizens can be considered by the commissioners.

Also, other evidence concerning traffic was produced. The planning staff concluded that truck traffic would present safety problems. A truck traffic noise study from the city of Golden was considered. And it was noted that Golden's city council recommended denial because of truck traffic congestion, noise, and dust.

■ Since the zoning decision of the commissioners was supported by competent evidence, its conclusion must be upheld on C.R.C.P. 106(a)(4) review. *Ford Leasing Development Co. v. Board of County Commissioners,* 186 Colo. 418, 528 P.2d 237 (1974).

## II.

Western next contends that the commissioners exceeded their jurisdiction and abused their discretion by denying the rezoning based upon traffic concerns. We disagree.

■ As stated above, both the zoning resolution and MEPP state that adverse traffic conditions are to be minimized. The zoning resolution, in section 1, states that it "is enacted for the purpose of promoting the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of Jefferson County by lessening the congestion in streets or roads ...." Western alludes to the MEPP's establishment of numerical points

in "Goal 17" for site suitability factors, and stresses that traffic is not even included as a factor to be considered. However, "Goal 13" in the MEPP is to "[m]inimize adverse impacts due to truck traffic." And the sections of the zoning resolution concerning traffic set forth that traffic consideration is a legitimate zoning objective. A decision made in furtherance of a legitimate zoning objective is not an abuse of discretion. *City of Colorado Springs v. Smartt*, 620 P.2d 1060 (Colo.1981).

■ Western's assertion that the commissioners exceeded their jurisdiction by imposing traffic regulations on Western that were not adopted by appropriate legislative action is without merit. There was no legislative activity undertaken here. The procedure whereby a rezoning application is approved or denied is quasi-judicial. *Margolis v. District Court*, 638 P.2d 297 (Colo.1981). And, as outlined above, traffic is a legitimate factor to be considered during the rezoning application process.

### III.

Western further contends that, as applied to its property, there are insufficient standards in the zoning resolution to determine whether to withhold or grant rezoning based upon traffic. To the contrary, we find that the standards in the instant case adequately guard against arbitrariness and capriciousness.

■ The section in the zoning resolution pertaining to P–D district provides that, when mining is a proposed use, the substantive requirements of the zoning resolution and MEPP, "as well as any other relevant factors," should be considered. Promoting the health, safety, and welfare of its residents and lessening congestion on the roadways as stated in the purpose section of the zoning resolution are "other relevant factors."

### IV.

Next, Western claims that the district court erred in concluding that the application of the zoning resolution to Western's property did not violate the Preservation Act.

*C & M Sand & Gravel v. Board of County Commissioners*, 673 P.2d 1013 (Colo.App.1983) is dispositive of this issue. There this court said: "Colorado is committed to local control of land use decision making." The court went on to hold that local land use regulation is not preempted by the Preservation Act:

> "By zoning, rezoning, granting a variance, or other action or inaction, local governments can permit any use of such land so long as the permitted use is not incompatible with mining, such as erecting permanent structures on this land. The Act, then, does not require local governments to allow mining in any area where it is commercially practicable, but only to preserve access to the mineral deposits."

■ In the present case the commissioners' action has not permanently excluded extraction. The Preservation Act was not violated.

### V.

Western's final assertion is that the trial court erred in dismissing its claim for relief under 42 U.S.C. § 1983. We do not agree.

■ Since we have found the commissioners' actions to have been proper, there is no factual basis for § 1983 relief. Western was not denied due process of law, nor was there any deprivation or confiscation of any of its property as a result of the existing zoning not being changed. *See Board of County Commissioners v. Simmons*, 177 Colo. 347, 494 P.2d 85 (1972).

Judgment affirmed.

SMITH and BERMAN, JJ., concur.