David R. SELLON, Kris J. Kovalik, and Crystal Hills Development Co., a Colorado corporation, Plaintiffs–Appellants,

v.

CITY OF MANITOU SPRINGS, a Colorado municipal corporation, and the City Council of Manitou Springs, Defendants–Appellees.

No. 85SA276.

Supreme Court of Colorado, En Banc.

Nov. 2, 1987.

Susemihl, Lohman, Kent, Carlson & McDermott, Peter M. Susemihl, Catherine L. Haug, Colorado Springs, for plaintiffs-appellants.

Sparks, Dix, Enoch, Suthers & Winslow, P.C. John W. Suthers, Colorado Springs, for defendants-appellees.

KIRSHBAUM, Justice.

Landowners David R. Sellon, Kris J. Kovalik and Crystal Hills Development Co., plaintiffs-appellants, appeal an order of the El Paso County District Court upholding the constitutionality of a zoning ordinance (hereinafter referred to as the hillside ordinance) adopted by the City of Manitou Springs (the City) and its City Council, defendants-appellees. The landowners assert that the hillside ordinance is unconstitutional on its face and as applied to them, and also argue that the City Council acted arbitrarily and capriciously and abused its discretion in adopting the hillside ordinance. We affirm.

I

In July of 1973, the City adopted a master plan for a parcel of property, referred to as "Crystal Hills," located adjacent to the City. That plan provided that 194 home sites could be developed on the property. On September 1, 1981, the City annexed Crystal Hills. The landowners purchased the property in March 1982.

The City contains many areas characterized by hills of varying degrees of slope. Consequently, problems of erosion, drainage and access are of particular concern to property owners, residents and city planners. On May 4, 1982, after much debate and discussion, the City Council adopted the hillside ordinance in an effort to deal in a meaningful fashion with some of these concerns. The ordinance created a special

hillside low density residential zone and established an equation for calculating the minimal lot sizes necessary for development of property placed in that zone.[1] When applied to steeply graded property, the equation requires in general that development plans be based on larger lot sizes than those required for properties not so steeply sloped. The equation also distinguishes between "platted" and "unplatted" land and requires larger lots for development of areas which are designated "unplatted" land at the time the property is zoned or rezoned hillside residential than in areas which are designated "platted" land.

On September 23, 1983, the City Council adopted a resolution placing Crystal Hills in a low density residential zone and authorizing the development of 108 residential units on the property. Many citizens disapproved of this decision, however, and the City Council decided to place the question of the rezoning of Crystal Hills before the voters of the City.[2] In November of 1983, a majority of the City's voting electorate indicated approval for the rezoning of Crystal Hills as hillside low density residential property.

The City Council subsequently scheduled two public hearings to consider the question of the appropriate zoning for the Crystal Hills property. On November 18, 1983, the landowners were advised by City representatives that, based upon the hillside density equation, residential development of the Crystal Hills property would be limited to sixty units under hillside low density residential zoning.

1. That segment of the ordinance reads:

(3) Development Requirements

    (a) Minimum Lot Size—Allowable lot size shall be based on the average percent of slope, defined as follows:

    Average Percent of Slope shall mean the percent of slope as computed by the following formula—

$$S = \frac{100IL}{A}$$

Where S = average percent of slope
    I = contour interval in feet

L = summation of length of all contour lines in feet
A = area in square feet of parcel being considered

2. A group of Manitou Springs residents attempted to place the rezoning issue on the general election ballot through the City's initiative and referendum process. The first petition filed was technically flawed, and the second petition was filed too late to make the general election ballot, thus requiring a later special election. Due to the City's concern that it could not afford to run a special election, the petitioners agreed to have the City Council place the issue on the general election ballot as an advisory question.

Lengthy public hearings were held before the City Council on December 6, 1983, and January 3, 1984. Although one of the landowners attended the hearings and stated that he was opposed to the rezoning, the landowners offered no evidence at these hearings. At the conclusion of the January 1984 hearing, the City Council voted to rezone the Crystal Hills property as hillside low density residential.

The landowners appealed this decision to the El Paso County District Court.[3] Following a two-day hearing, the district court affirmed the City Council's action.

## II

■ The landowners assert that the hillside ordinance is insufficiently related to public health, safety and welfare objectives of the City and that its terms are impermissibly vague. They suggest that because of these alleged deficiencies the hillside ordinance violates the due process clauses of the United States and Colorado Constitutions.[4] We disagree.

### A

The principles applicable to a determination of whether a particular municipal legislative enactment violates constitutional due process standards are well settled. A presumption of validity attaches to zoning decisions of municipal zoning authorities.[5] *Board of County Comm'rs v. Mountain Air Ranch*, 192 Colo. 364, 563 P.2d 341 (1977); *Wright v. City of Littleton*, 174 Colo. 318, 483 P.2d 953 (1971); *Baum v. City & County of Denver*, 147 Colo. 104, 363 P.2d 688 (1961). Thus, a party challenging a zoning ordinance on constitutional grounds assumes the burden of proving the asserted invalidity beyond a reasonable doubt. *Tri–State Generation & Transmission Co. v. City of Thornton*, 647 P.2d 670 (Colo.1982); *Holcomb v. City & County of Denver*, 199 Colo. 251, 606 P.2d 858 (1980); *Ford Leasing Dev. Co. v. Board of County Comm'rs*, 186 Colo. 418, 528 P.2d 237 (1974); *Baum v. City & County of Denver*, 147 Colo. 104, 363 P.2d 688.

■ For purposes of the United States Constitution, an ordinance containing provisions that bear a rational relationship to legitimate state concerns satisfies due process requirements.[6] *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct.

---

3. The landowners filed their appeal pursuant to C.R.C.P. 106(a)(4), alleging that the City Council abused its discretion and acted arbitrarily and capriciously. They also asked the court to enter a declaratory judgment holding the ordinance unconstitutional.

4. Both the fourteenth amendment to the United States Constitution and article II, section 25, of the Colorado Constitution provide that no person shall be deprived of life, liberty or property, without due process of law. Although the briefs submitted by the landowners repeatedly allege that the ordinance is "unconstitutional," they do not contain explicit citations to any specific due process clause. However, review of the cases cited by the landowners suggests that they base their assertions in part on the due process clauses of the United States and Colorado Constitutions.

During the course of their due process argument, the landowners do state that "the classification contained in the hillside ordinance is not related to its purposes and violates plaintiffs' rights to equal protection. U.S.C.A. Const. Amend. 14, Colo. Const. Art. 5, § 25." The landowners then assert that the ordinance "unfairly" allows "similar and adjacent properties" in the City to be developed at higher densities than Crystal Hills. They assert that the hillside ordinance provision which requires larger lots on unplatted land than on platted land is unfair. To the extent the landowners suggest a separate equal protection basis for their challenge to the ordinance, we conclude that the evidence refutes any suggestion that the requirement of larger lot sizes and correspondingly smaller population densities on unplatted property is not related to valid purposes of public health and safety.

Constitutional guarantees of equal protection of the law require similar legislative treatment for similarly situated persons or property and prohibit legislative distinctions not based on substantial differences reasonably related to the persons or property dealt with and to the purpose of the legislation. *McClanahan v. American Gilsonite Co.*, 494 F.Supp. 1334 (D.Colo. 1980); *People v. Mozee*, 723 P.2d 117 (Colo. 1986).

5. Manitou Springs is a home rule city. As such, its zoning authority is governed by its own charter and ordinances. *City of Colo. Springs v. Smartt*, 620 P.2d 1060 (Colo.1981).

6. As with other ordinances, a zoning law which infringes upon a protected liberty must be narrowly drawn and must further a sufficiently substantial governmental interest. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).

2176, 68 L.Ed.2d 671 (1981); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). The due process clause of article II, section 25, of Colorado's Constitution requires a reasonable relation between an ordinance and a valid interest, such as public health, safety, morals or general welfare. *Nopro Co. v. Town of Cherry Hills Village*, 180 Colo. 217, 504 P.2d 344 (1972); *Wright v. City of Littleton*, 174 Colo. 318, 483 P.2d 953. The hillside ordinance must be evaluated pursuant to these standards.

The record reflects that prior to the adoption of the hillside ordinance great attention had been directed by the City Council to problems that had developed after improvements were made to property containing relatively steep slopes. For example, the city manager testified that the development of single-family units on steeply graded plots of land continually forced the City to deal with erosion, drainage, maintenance and emergency access issues. The record also contains evidence that residents of various areas of the City historically had experienced significant difficulties with some or all of these problems. The adoption of the hillside ordinance reflected a considered effort by the City Council to deal with these very real problems. Viewed in light of these facts, the ordinance addresses significant issues directly affecting the health and welfare of the City's residents.

■■■ At the review hearing conducted by the district court the landowners introduced evidence to the effect that the hillside ordinance was not the best means available to address problems of erosion, drainage or emergency access associated with development of residential housing units in steep slope areas of the City. However, the question is not whether other solutions to a governmental problem are feasible or superior to the program actually adopted; the question is whether the decision made is itself reasonably and rationally related to the problem being addressed.

*See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176; *Nopro Co. v. Town of Cherry Hills Village*, 180 Colo. 217, 504 P.2d 344; *Wright v. City of Littleton*, 174 Colo. 318, 483 P.2d 953. In this case, it is abundantly clear that the provisions of the hillside ordinance are rationally and reasonably related to problems of erosion, drainage, maintenance and emergency access occurring on sloping terrain that affect the health and safety of the City's residents.

**B**

The landowners next argue that the hillside ordinance is void for vagueness because it contains no definitions of the terms "platted" and "unplatted." [7] We disagree.

■■■ A legislative enactment violates due process requirements when it contains language so vague that it fails to provide fair notice of what conduct is prohibited or fails to provide law enforcement authorities with sufficiently definite standards for nonarbitrary, nondiscriminatory enforcement of the law. *High Gear & Toke Shop v. Beacom*, 689 P.2d 624 (Colo.1984); *People ex rel. City of Arvada v. Nissen*, 650 P.2d 547 (Colo.1982). Civil as well as penal enactments are subject to vagueness challenges. *Weissman v. Board of Educ.*, 190 Colo. 414, 547 P.2d 1267 (1976). Due process of law requires neither scientific nor mathematical exactitude in legislative draftsmanship. *People v. Aalbu*, 696 P.2d 796 (Colo.1985); *People v. Gross*, 670 P.2d 799 (Colo.1983). In the absence of a specific definition by the governmental authority promulgating the challenged term, it will be given its commonly accepted definition. *Gonzales v. Industrial Comm'n*, 740 P.2d 999 (Colo.1987); *People v. District Court*, 713 P.2d 918 (Colo.1986).

■■■ Relatively extensive testimony was presented at the review hearing on the definition of the term "plat." The landowners' expert witness testified that the term plat can refer to a number of differ-

---

7. The landowners also assail the hillside ordinance for its failure to define the term "parcel." The parties stipulated at the review hearing to

the meaning of the term, thus this argument is moot.

ent things, such as a sketch plat, an annexation plat, a utility plat and a street plat. He conceded, however, that the term "plat" is a term of art in the planning profession and that it generally is used with reference to a subdivision plat. The notion that the term "plat" commonly refers to a subdivision plat was endorsed by both of appellees' expert witnesses. The evidence fully supports the trial court's conclusion that the commonly understood meaning of the term refers to a subdivision map which has been prepared for approval by appropriate governmental authorities.

▆▆▆ Though not binding upon the City, we find additional support for this conclusion in the legislature's definition of the term. Section 30–28–101, 12A C.R.S. (1986), defines "plat" as "a map and supporting materials of certain described land prepared in accordance with subdivision regulations as an instrument for recording of real estate interests with the county clerk and recorder." In view of the substantial similarity of all of these definitions, and the testimony that the common meaning of the term "plat" is well understood, we conclude the term is not so vague as to violate the protections afforded by the due process clause. Land which does not fall within the concept of plat, of course, is not platted, or—as the ordinance properly and sufficiently indicates—is "unplatted."

### III

▆▆▆ The landowners next contend that the hillside ordinance is confiscatory and therefore unconstitutional as applied to them because it, in effect, precludes the use of the Crystal Hills property for any reasonable purpose. It is true that a zoning ordinance that prohibits the use of property for any reasonable purpose will be deemed confiscatory and therefore violative of just compensation and due process protections afforded by Colorado's Constitution. *Nopro Co. v. Town of Cherry Hills Village*, 180 Colo. 217, 504 P.2d 344 (1972); *Bird v. City of Colo. Springs*, 176

Colo. 32, 489 P.2d 324 (1971); *Madis v. Higginson*, 164 Colo. 320, 434 P.2d 705 (1967). However, our decisions have consistently emphasized the principle that a landowner is not entitled to obtain maximum profits from the use of property, and that so long as the zoning ordinance leaves some reasonable use for the property, the ordinance does not violate state constitutional standards. *Nopro Co. v. Town of Cherry Hills Village*, 180 Colo. 217, 504 P.2d 344; *see Bird v. City of Colo. Springs*, 176 Colo. 32, 489 P.2d 324; *Baum v. City & County of Denver*, 147 Colo. 104, 363 P.2d 688 (1961).

▆▆▆ The evidence establishes that the hillside ordinance does not render the Crystal Hills property devoid of any reasonable use, and that the landowners may still build a minimum of sixty residential units on the land.[8] They are not entitled to obtain maximum profits from the use of their land or to obtain the highest and best use for the property. *Nopro Co. v. Town of Cherry Hills Village*, 180 Colo. 217, 504 P.2d 344; *Wright v. City of Littleton*, 174 Colo. 318, 483 P.2d 953 (1971). The landowners failed to establish that as the result of the hillside ordinance they could not put their property to any reasonable use. They therefore failed to satisfy their burden of demonstrating beyond a reasonable doubt that the ordinance was confiscatory.

### IV

▆▆▆ The landowners assert that the City Council abused its discretion in violation of C.R.C.P. 106(a)(4) by placing the issue of whether Crystal Hills should be rezoned on the general municipal election ballot for an advisory vote. Section 5.13 of Chapter V of the City Charter of Manitou Springs expressly allows the City Council to submit questions to a vote of the citizenry. It provides:

> The Council, on its own motion, shall have the power to submit at a general or special election any proposed ordinance

**8.** Testimony presented by the City at the review hearing indicated that the landowners may be able to build more than sixty units on their property.

or question to a vote of the people in the manner as in this Charter provided.

Clearly, the City Council's actions were well within the bounds of its authority.

## V

■■■ Finally, the landowners argue that the City Council's decision to rezone Crystal Hills was arbitrary, capricious and an abuse of discretion in violation of C.R.C. P. 106(a)(4). A trial court reviewing a quasi-judicial action pursuant to C.R.C.P. 106(a)(4) must uphold that decision unless there is no competent evidence in the record to support it. *E.g., Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304 (Colo. 1986); *Corper v. City & County of Denver,* 191 Colo. 252, 552 P.2d 13 (1976). The record in this case reflects that the City Council adopted the hillside ordinance because of long-standing concern over problems of erosion, drainage, maintenance and emergency access affecting hilly property. The decision to place Crystal Hills in the zone established by the hillside ordinance was entirely consistent with prior actions of the City seeking to address these problems. The record also establishes that the sharply contrasting geographical configurations of Crystal Hills make it well-suited for the zoning requirements established in the hillside ordinance. The City Council's action represents a reasonable and responsible effort to reconcile the interests of property owners and residents in the context of the geographical realities of the City. It was not arbitrary and capricious.

## VI

For the foregoing reasons, the judgment of the district court is affirmed.