No. 19,054.

ROBERT A. LEHMAN *v.* CITY AND COUNTY OF DENVER.
(355 P. [2d] 309)

Decided September 19, 1960.

Mr. ROBERT A. LEHMAN, plaintiff in error, pro se.

Mr. JOHN C. BANKS, Mr. HAROLD J. HEAFER, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

PLAINTIFF in error was defendant in the trial court in a prosecution instituted by the City and County of Den-

ver charging him with violation of Sec. 850.15 of the ordinances of the City and County of Denver. The case was originally filed in the municipal court and, following a trial, the defendant was found guilty and was fined $10.00. He appealed to the superior court where he was again convicted and a suspended fine of $5.00 imposed. The present writ of error to the superior court is based upon this judgment of conviction.

The stipulated facts are that on April 11, 1958, the defendant parked his automobile on private property at the Union Station in the City and County of Denver. The area was one which was restricted to "Hertz Parking Only." It was agreed that the area involved is property of the Union Station and that it was probably leased to the Hertz Company.

The ordinance under which the prosecution was instituted provides:

*"Parking in private driveway or on private property.* It shall be unlawful for any person to park or stand a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading, in a private driveway or on private property without the express or implied consent of the owner or person in lawful possession of such driveway or property."

It is to be noted that the section specifically in question is part of an article which defines various offenses against public property and specific private property.

In seeking a reversal, the defendant presents three points: *First,* that the ordinance was *ultra vires; second,* that it is contrary to the general laws of the State of Colorado; and *third,* that it is unreasonably broad and therefore unconstitutional.

Only the first of defendant's contentions has been argued, hence we limit our decision to that point. Defendant's argument is that the subject matter of the ordinance under which he was convicted is essentially private in that it seeks to protect private rights rather than

any general interest of the community. Essentially, he maintains, the statute prohibits private trespass. Traditionally, according to defendant, private trespass unaccompanied by a public disturbance, is not within the jurisdiction of a municipality; the only sanction available being the private one of a civil action.

In determining whether the City has exceeded its powers, there are some distinctions which must be made. First, the legislative jurisdiction of Denver derives from Article XX of the state constitution, together with the Charter adopted pursuant thereto. In the area of local legislative jurisdiction, Denver is not limited by the statutes pertaining to powers of towns and cities, C.R.S. '53, 139-1-1, *et seq.* Consequently, the cases cited by counsel, based upon particular legislative delegations, are not applicable. A second prefatory distinction to be noted is that no issue is here raised as between local or statewide jurisdiction. Counsel does not argue that the subject matter here in question is within the exclusive legislative jurisdiction of the State of Colorado, therefore, we are not required to resolve any such conflict. On the other hand, counsel concedes that the state could enact legislation of the character here in question, but infers that the present subject matter either has not been delegated to the City or is in its nature outside the municipal orbit. The only issue which need concern us is whether the City acted within the scope of its powers.

The Twentieth Amendment does not limit the legislative power of home rule cities with respect to local matters, but on the contrary seeks to grant to municipalities all the power that could properly be delegated with respect to local matters. This is pointed out with great clarity in the leading case of *Denver v. Hallett,* 34 Colo. 393, 83 Pac. 1066. There the Court, speaking through Mr. Justice Steele, said:

" * * * The purpose of the twentieth article was to grant home rule to Denver and the other municipalities of the state, and it was intended to enlarge the powers be-

yond those usually granted by the legislature; and so it was declared in the article that until the adoption of a new charter by the people that the charter as it then existed should be the charter of the municipality, and further that the people of Denver shall always have the exclusive power of making, altering, revising or amending their charter; and further that the charter, when adopted by the people, should be the organic law of the municipality and should supersede all other charters. It was intended to confer not only the powers specially mentioned, but to bestow upon the people of Denver every power possessed by the legislature in the making of a charter for Denver."

The remaining question is whether the subject matter of the present ordinance is one which could have been conferred on Denver by the General Assembly. The answer to this question is found in *Colorado Springs v. Smith,* 19 Colo. 554, 36 Pac. 540, a decision which predated Article XX of the Constitution. Operating pursuant to a statute enacted as a part of the towns and cities act which authorized the licensing and regulation of "hackmen, omnibus drivers, carters, cabmen, porters, expressmen, and all others pursuing like occupations," and which also authorized the city to "pass and enforce all necessary police ordinances," the City enacted an ordinance prohibiting the occupation of "depot grounds by hackmen, stage and omnibus drivers, except that portion allotted to them by the station agent." In upholding the ordinance as a valid exercise of municipal legislative power, the Court, speaking through Mr. Justice Elliott, said:

"The ordinance in question is not to be construed as giving a railroad company the right to exclude from its depot grounds or premises any person lawfully engaged in serving the traveling public, either with or without vehicles. Such persons are entitled to access to the depot platform or station house under reasonable regulations, provided they conduct themselves and pursue their voca-

tions in a peaceable and orderly manner. The ordinance is to be construed as a regulation to promote the convenience of the traveling public, and to prevent disorder at railway stations, and not as an ordinance conferring upon railroad companies the power to grant to certain runners, drivers, hackmen, or expressmen, exclusive rights and privileges, and thus unjustly discriminate between persons engaged in such occupations. From the evidence introduced it would seem that this was the construction placed upon the ordinance by the employees of the railroad company, as well as by the different officers of the city. Thus construed, we see no reason why the ordinance should not have been enforced. *Cole v. Rowen,* 88 Mich. 219; *McConnell v. Pedigo,* 18 S.W. Rep. (Ky.) 15; *Montana Un. Ry. Co. v. Langlois, et al.* (Mont.), 24 Pac. Rep. 209; *Cravens v. Rodgers,* 14 S.W. Rep. (Mo.) 106; *Keilkopf v. City of Denver, ante,* 325; Horr & Bemis on Ordinances, §128 *et seq.;* also, §188 *et seq.*

"The evidence shows that no place had been allotted by the station agent to defendant, because he had never applied for a place for his hack; that defendant insisted upon occupying a place which had been assigned to other parties; and for aught that appears in this record, there were other convenient places upon the depot grounds which defendant could have secured for the purpose of conducting his business. If it had been shown that the station agent had refused to allot space to defendant, or had acted unfairly or unreasonably in the matter of allotting space, so as to give unfair advantage to others to the manifest detriment of defendant, a different case would be presented. But upon the record before us there seems to be no reason for defendant's refusal to comply with the ordinance."

Essentially, the Colorado Springs ordinance punished private trespass of a specific nature and was held to be for the benefit of the public and therefore a proper exercise of legislative jurisdiction of the City of Colorado Springs. In the case at bar the ordinance is not limited

114

to prohibiting private trespass on depot property, but includes automobile trespasses on all private property. It is impossible to discern here a distinction favorable to the defendant. The general scope of the ordinance does not tend to mark it as treating with a subject matter inherently outside the legislative jurisdiction of a municipality. If anything, its general character should add to its validity.

There is nothing in the Charter which supports an argument that Denver, as a home rule city, is more restricted than a so-called legislative city. See Sec. 219, Charter, City and County of Denver, which grants to the Council power to enact all ordinances necessary to protect " * * * life, health and property, to declare, prevent and summarily abate and remove nuisances; to preserve and enforce good government, general welfare, order and security of the city and county and the inhabitants thereof; to enforce ordinances and regulations by ordaining fines not exceeding three hundred dollars or imprisonment not exceeding ninety (90) days, * * * "

██ We conclude the subject matter of Sec. 850.15 of the ordinances of the City and County of Denver is not essentially private; that it is intended to protect all citizens against automobile trespass upon private property, and that by its adoption the Council acted within the legislative authority granted by Article XX and in Sec. 219 of the Charter.

It follows that the judgment of the superior court should be and is affirmed.

Mr. Justice Hall and Mr. Justice Day concurring.