206 A.2d 630.

FRANK E. TITUS, JR., *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF EAST PROVIDENCE.

FEBRUARY 4, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

Powers, J.   This is a petition for certiorari to review and quash the action of the respondent board in granting both an exception and a variance so as to permit the erection of a gasoline service station in a residential A district.   In compliance with the writ the board duly certified the pertinent papers to this court.

It appears therefrom that sometime in January 1964, Patt East, Inc., a Rhode Island corporation, hereinafter referred to as the applicant, purchased a tract of land on the west side of Newport avenue in the city of East Providence.   The land consists of three parcels laid out and delineated as lots numbered 555, 556, and 557 on assessor's plat 40.   They have an aggregate area of 27,905 square feet and are bounded on the north by Roger Williams avenue, on the south by Vista Drive, and on the east by Newport avenue along which lots 555 and 557 have a frontage of approximately 197 feet.

It further appears that on February 10, 1964, the applicant applied for a variance pursuant to G. L. 1956, §45-24-19, and for an exception pursuant to secs. 32-3, 32-5, 32-7, 32-16 and 32-20 of the revised city ordinances.   It

claimed that the land had been vacant for many years and could not be used for any of the uses permitted in a residential A zone due to the commercial character of the surrounding neighborhood on Newport avenue and the high volume of traffic.

It should be noted that the property was included in a tract of land developed in 1955 by Alphage Ferland & Sons, Inc. as a residential development and designated "Rumford Terrace." A plat bearing such designation was accepted by the city and so recorded. However, the three lots in question were sold to the Assembly of God Church of Providence in May 1955 for the construction of a church, in connection with which a small parking lot was to be provided.

Thereafter the property was found to be unsuited for such purpose and Tidewater Oil Company negotiated to buy it if an exception or variance were obtained so as to permit the erection of a gasoline service station. An application made therefor was denied by the zoning board, and in affirming that decision this court found "that the area in reality as well as in name was residential; that public welfare and convenience did not require the invasion of a residential area by a business or commercial use; and that there was genuine resistance to such invasion for reasons of health." *Assembly of God Church* v. *Zoning Board of Review*, 91 R. I. 259, 264.

The denial by the board in that instance is one of the grounds relied on by the instant petitioners in support of their appeal and will be considered *infra*.

Further, seasonable notice of the pendency of the instant application and of a hearing to be held thereon was published in the Providence Journal on February 13, 1964 and written notice was sent to all of the property owners entitled thereto. All such notices, as well as that given by publication, were signed by "Kenneth S. Wilder, Zoning Clerk." The petitioners contend that they were defective

in that the city ordinance requires notice to be given by the building inspector. Their reasoning in this regard will likewise be considered at a more appropriate juncture.

It appears from the transcript of the hearing held February 24, 1964, that testimony was taken in behalf of and in opposition to the application and documentary evidence offered by the applicant received, as was a written petition bearing the signatures of seventy-seven remonstrants.

Robert H. Eder, president of the Rhode Island Oil Company, testified in favor of the application that his company intended to build a four-tank, three-bay, left-hand, canopied type station. The building would be constructed of smooth-finished, painted cinder blocks, and in conformity to minute specifications, a set of which was placed in the record for consideration by the board.

He testified: "People do not go out of their way to go to a service station. They go to a station that is convenient. With this traffic here, with the removal of some of the transient traffic which now goes along Newport Avenue, when interstate 195 is completed the traffic flow along Newport Avenue will still increase year by year, but will be an orderly increase. With this type of traffic, and the type cars that go by, this station, in my opinion, is necessary along Newport Avenue."

It was also his testimony that the service station in and of itself would not increase traffic along Newport avenue, but rather that service stations survive on the traffic which passes a given site for various reasons. During the course of his testimony a letter was introduced from Philip S. Mancini, the state traffic engineer, showing a steady increase in daily traffic from 14,700 in 1957 to 18,500 in 1963. Additionally, the plat plan introduced in connection with Mr. Eder's testimony diclosed that the state traffic engineer, in whom jurisdiction is vested, had authorized two curb cuts of thirty feet each in the curb along Newport avenue.

James C. Raleigh, a real estate expert with some sixteen years' experience, including work for the city of East Providence, a witness for the applicant, testified that he was familiar with real estate values in the area and, reviewing all of the uses permitted in a residential zone, that the land could not be devoted to any of such uses. This opinion was based on evidence to the effect that applicant had paid $36,000 for the land in question. Mr. Raleigh negated adaptability of the property to permitted uses on the ground that those other than residential were not realistically feasible considering the limited size of the property and that a residential use was out of the question because market values of neighboring residences were incompatible with a land value of $36,000. He illustrated this latter testimony by referring to a sale in 1962 for $13,500 of a nearby residence located on a 5,034-square-foot lot.

He testified that the building of the proposed station would not impair the value of neighboring property and gave concrete examples therefor.

A map prepared by him was introduced as an exhibit designed to point up the commercial character of the immediate area. It shows that the westerly side of Newport avenue, on which the property is located, is zoned business C north of Roger Williams avenue, as is the westerly side beginning at a point 700 feet south of Vista Drive. On the easterly side of Newport avenue, the area is zoned business C from a point 169 feet south of Vista Drive northerly to the city line, some 3,000 feet. Immediately across from the property are Scott Motors constructed in 1960 and Newport Motors constructed in 1961. Another commercial enterprise located on the easterly side of Newport avenue but constructed since 1957 is Burger Chef, a drive-in restaurant, just south of Vista Drive.

Added to the record by the applicant was a letter from William B. Collins, divisional manager of the New England

Fire Insurance Rating Association. It stated that the construction of the proposed service station would have no effect on fire insurance rates applicable to surrounding property.

The petitioner Frank E. Titus, Jr., testified that there was no need for an additional service station at the proposed site; that it would constitute a traffic hazard; that a number of children live in the neighborhood; that noise, odor and flashing lights would constitute a nuisance; and that it would decrease the value of homes in the neighborhood.

His objections and reasons therefor were echoed by several other remonstrants. Among them was a resident whose property is located on the southwesterly corner of Newport avenue and Vista Drive who testified that the plat developer had offered to repurchase the three lots from the Assembly of God Church.

The board took the application under advisement and thereafter viewed the premises and the surrounding neighborhood. Their decision reviews the evidence, comments on what they observed while taking a view and makes the following findings:

"1. The premises are not suitable for any of the uses in a Residence A. District, and to restrict the owner to these uses would deprive the owner of all beneficial use of its land.

"2. The proposed use will not be contrary to public interest, and would observe the spirit of the Ordinance and do substantial justice.

"3. The proposed use is reasonably necessary for the convenience or welfare of the public, and the public convenience and welfare will be substantially served.

"4. The appropriate use of neighboring properties will not be substantially or permanently injured.

"5. A modification of the requirements of the Ordinance is deemed necessary to secure an appropriate development of this land, where adjacent to the lot

on the north, east, and southeast there are business uses in a Business C. Zone."

Subject to certain conditions designed to improve appearances and regulate the hours and manner in which the station would be operated, the applicant was granted "a variance pursuant to the enabling act and for an exception pursuant to Sec. 32-7 (B) and (C) and Sec. 32-20 (1) and 32-20 (6) of The Ordinance."

An examination of the cited ordinance provisions establishes that the board was vested with jurisdiction to authorize a gasoline service station as a special permitted use when in its judgment, and after public hearing, "the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured * * *."

The petitioners contend that for several reasons the board's decision was arbitrary and constitutes an abuse of their discretion. They also argue that, for failure to comply with the requirement of notice as mandated by the ordinance, the board lacked jurisdiction.

This latter argument is premised on the proposition that, although notice is required to be given by the building inspector, the publication and personal notices in the instant case bore the name of the clerk of the respondent board. In support of their position they cite *Radick* v. *Zoning Board of Review,* 83 R. I. 392.

There, quoting the language of the ordinance relative to notice given by the inspector of buildings, this court stated that the provision was not merely directory but mandatory and failure to comply with it was a jurisdictional defect. In *Radick,* however, it was established as a fact that the personal notice to which property owners within one hundred feet of the property were entitled had not been given, and the petitioner had no actual notice of the hearing until after it had been held and the relief sought granted. Such is not the fact here. The instant petitioners misconceive

the rationale of the holding in the *Radick* case. It did not decide that notice given by the building inspector is a prerequisite to jurisdiction. Rather, we held that the requirement of notice is mandatory.

In *Hirsch* v. *Zoning Board of Review,* 56 R. I. 463, we held, in effect, that attendance at the hearing by a property owner entitled to notice constituted a waiver since the objective of the notice requirement was to give property owners an opportunity to be heard. See *Perrier* v. *Board of Appeals,* 86 R. I. 138. It follows that by his presence a property owner has such opportunity and is therefore not prejudiced by failure to receive the notice prescribed by the ordinance.

In the instant case, all petitioners were either present in person or appeared as other remonstrants in a petition prepared by petitioners Frank and Mary Titus.

Even so, petitioners further contend that the action of the board was illegal in that the granting of both a variance and an exception exceeded the board's jurisdiction as limited by the actual notice to hear an application for a variance or an exception, but not both. It may be, as hereinafter considered, that the dual nature of the relief granted is open to question, but not for the reason advanced.

It is difficult to comprehend how the board, in granting a variance, could find that strict compliance with the terms of the ordinance would result in depriving the applicant of all beneficial use of its land, when at the same time the board could find that, consistent with the terms of the ordinance, they had jurisdiction to grant a special exception which would provide the applicant with the necessary relief. In *Kraemer* v. *Zoning Board of Review,* 98 R. I. 328, 331, 201 A.2d 643, 644, we stated:

> "Under our enabling act and in ordinances enacted pursuant thereto, the variance and exception are designed to meet two entirely different needs. The variance contemplates a departure from the terms of the

ordinance in order to preclude confiscation of property, while the exception contemplates a permitted use when under the terms of the ordinance the prescribed conditions therefor are met."

In our judgment, when the decision of a local board granting an exception is sustained by this court, substantial justice has been done and the spirit of the ordinance is best preserved by quashing that portion of the decision which, in addition to the relief afforded by way of special exception, purports to grant a variance as well.

Since we are of the opinion that the board in the instant case did not abuse their discretion in granting the exception, it follows that so much of their decision as is applicable to the granting of a variance should be quashed.

Turning to the granting of the exception, however, petitioners contend that the board's decision was illegal for several reasons. They call our attention to the fact that a former owner of this property had been denied a variance or an exception so as to permit the erection of a gasoline service station and that this court had sustained the board and thus lent finality to such findings in the absence of a change of circumstances, citing: *Day* v. *Zoning Board of Review*, 92 R. I. 136; *Churchill* v. *Zoning Board of Review*, 98 R. I. 302, 201 A.2d 480, and *Marks* v. *Zoning Board of Review*, 98 R. I. 405, 203 A.2d 761. Consistently, they further argue that no material changes have occurred.

We have heretofore referred to the case on which they rely, namely, *Assembly of God Church* v. *Zoning Board of Review, supra*. A comparison of the evidence presented at the hearing pursuant to which that case was decided with that which was before the board in the instant case discloses a material change in circumstances. There is present here not merely testimony by the applicant's witnesses of three new commercial enterprises immediately opposite the property, but also the comments of the board in their decision of additional such enterprises inaugurated in the im-

mediate neighborhood since the close of the 1957 hearing. The board, as previously stated, took a view and in their decision make detailed references to their observations.

Nevertheless, petitioners argue that the decision of the board constitutes rezoning and that their conclusions are such as can only be lawfully made by the city council and are never grounds to justify the granting of an exception. If such were the ground on which the board granted relief by way of an exception, there could be merit in this contention. See *Adams* v. *Zoning Board of Review*, 86 R. I. 396.

However, the conclusions stated by the board to which petitioners refer are, in our judgment, related to their finding that the subject property is not adaptable to any of the uses authorized in a residential A district and are not the reasons why the board granted affirmative relief by way of an exception. Before such relief would have been in order, it was incumbent on the applicant to negate adaptability to all authorized uses. See *Cole* v. *Zoning Board of Review*, 94 R. I. 265, 197 A.2d 166.

The relevant and controlling reasons given by the board were that, in their judgment, the public convenience and welfare would be substantially served and the appropriate use of neighboring property would not be substantially or permanently injured. In their decision they relate these provisions of the ordinance to the testimony of applicant's witnesses, its documentary evidence and the conclusions reached by virtue of the view they took. From our review of all such factors, we cannot say that there is a complete lack of competent evidence, and it is well settled that ordinarily the weight of the evidence is not for this court to determine.

The petition for certiorari is granted for the limited purpose of quashing that part of the decision which grants a variance but is otherwise denied and dismissed, and the papers in the case are ordered returned to the respondent board with our decision endorsed thereon.

*John P. Bourcier,* for petitioners.

*Sarkis Tatarian,* City Solicitor, *Joseph T. Little,* Assistant City Solicitor, for respondent.

*DelSesto & DelSesto, Christopher T. DelSesto, Jr.,* for applicant.