Ysidro M. ZAVALA and Norma L. Dotson, Plaintiffs–Appellants,

v.

CITY AND COUNTY OF DENVER, a single body politic and corporate; Board of Zoning Adjustment for the City and County of Denver; Marjorie Hornbein, Lawrence Henry, Ernest Capillupo, Frana Mace, and Charles Cousins, as members of the Board of Zoning Adjustment for the City and County of Denver; and Dorothy Nepa, as Zoning Administrator for the City and County of Denver, Defendants–Appellees.

No. 85SA300.

Supreme Court of Colorado, En Banc.

June 20, 1988.

Rehearing Denied July 11, 1988.

---

Beck and Cassinis, Howard J. Beck and Diana J. Payne, Aurora, for plaintiffs-appellants.

Stephen H. Kaplan, City Atty., Robert M. Kelly and Daniel B. Slattery, Denver, for defendants-appellees.

KIRSHBAUM, Justice.

Ysidro M. Zavala and Norma L. Dotson (appellants) appeal a district court's judgment rejecting their contentions that sections of the Revised Municipal Code of the City and County of Denver (the Code) violate their rights to substantive due process of law and equal protection of the law under the United States and Colorado Con-

stitutions and that the enforcement of those provisions by municipal authorities was arbitrary, capricious, constituted an abuse of discretion and also violated appellants' constitutional rights.[1] The district court based its conclusion solely on our decision in *Rademan v. City & County of Denver*, 186 Colo. 250, 526 P.2d 1325 (1974). We affirm the judgment insofar as it denied the appellants' claims alleging improper enforcement of the Code against them. However, because we conclude that *Rademan* is not dispositive of all of the appellants' claims, and because the district court's ruling lacks certain critical findings, we reverse the judgment insofar as it relates to the appellants' remaining claims and remand the case for further proceedings consistent with this opinion.

I

The appellants, a man and a woman who are neither married nor otherwise related, purchased as joint tenants a residential lot and dwelling on February 9, 1984, from the International Missionary Society of the Seventh Day Adventist Church. The property is located in Denver and is subject to the provisions of the Code regulating the use of land and structures.

The Code creates specific zoning districts throughout Denver and defines what uses may be pursued in each district. Uses of property defined by the Code include uses by right, uses by temporary permit, accessory uses and home occupations. Denver, Colo.Rev.Mun.Code § 59–2(97) (1982). Uses by right require no special authorization from administrative officials. *See* Denver, Colo.Rev.Mun.Code § 59–2(15) (1982). Persons wishing to use land or structures for uses other than uses by right must obtain authorization from the Department of Zoning Administration (the Department) for that use.

Eleven different residential districts are established by the Code. Occupancy of buildings as "single unit dwellings" is authorized as a use by right in ten of those districts. A "single unit dwelling" is defined as follows:

A single detached structure having but one dwelling unit with a single kitchen and housing any number of persons bearing to each other the relationship of: husband, wife, mother, father, grandmother, grandfather, son, daughter, sister, brother, stepson, stepdaughter, stepbrother, stepsister, stepmother, stepfather, grandson, granddaughter, mother-in-law, father-in-law, sister-in-law, brother-in-law, daughter-in-law, son-in-law, uncle, aunt, nephew or niece living together as a single, non-profit housekeeping unit, plus domestic servants employed for service on the premises; provided, however, that upon application to and issuance by the department of zoning administration of a permit therefor, one additional kitchen may be maintained.

Denver, Colo.Rev.Mun.Code § 59–2(131) (1982). Although in some of the residential districts persons may request permits from the Department to use land or structures for certain permitted home occupations in connection with the operation of a single unit dwelling, home occupation uses are not permitted in other residential districts. Permissible home occupation uses also vary. *Compare* Denver, Colo.Rev.Mun. Code § 59–102(4) (1982) *with* Denver, Colo. Rev.Mun.Code § 59–103(4) (1982). In some, but not all, of those districts in which home occupation uses are permitted, land and structures may be used for "rooming and/or boarding," which the Code defines as "[t]he furnishing of lodging with or without meals for compensation to permanent guests." Denver, Colo.Rev.Mun.Code § 59–2(121) (1982).

Department officials received a telephone call from an unidentified caller complaining about activities of the former owners and occupants of the house. While investigating that complaint, Department representatives learned that the appellants are not related by marriage or by blood. The appellants occupy the dwelling and operate it as a single housekeeping unit, share expenses, and describe themselves as companions. They have not sought a permit to use their property for any home

---

**1.** This court has jurisdiction pursuant to § 13–4–102(1)(b), 6A C.R.S. (1987).

occupation use. Each depends upon the economic contribution of the other to maintain the premises. The record contains no evidence to suggest their presence has in any manner adversely affected the neighborhood or its residents.

Section 59–102(1)(b) of the Code authorizes as a use by right in RS–4 zones the use of land and structures for single unit dwellings. On June 1, 1984, the Department issued an order to the appellants directing them to cease and desist violating sections 59–102(1)(b) and 59–2(131) of the Code on or before June 30, 1984.

The appellants appealed this order to the Board of Zoning Adjustment for the City & County of Denver (the Board). Following a hearing, the Board upheld the order, concluding that it lacked jurisdiction "to add or effect changes to the uses enumerated in a district." However, because the Board concluded that the appellants would experience hardship because they would have to either sell their house or alter their personal relationship, it granted the appellants a six-month stay of the ruling, pursuant to § 59–54(6) of the Code.[2]

The appellants then filed a complaint in the Denver District Court against the Board, its members, the City and County of Denver (the City) and the City's Zoning Administrator for judicial review of this ruling pursuant to C.R.C.P. 106(a)(4) (review of ruling by an inferior tribunal) and section 24–4–106, 10 C.R.S. (1978) (review of agency action). The appellants also sought declaratory relief pursuant to C.R.C.P. 57(a). The C.R.C.P. 106(a)(4) claim alleged, *inter alia*, that sections 59–2(131) and 59–102(1)(b) of the Code violated the appellants' rights under the United States and Colorado Constitutions to freedom of association, due process of law and equal protection of the laws and that the decisions and orders of the appellees were arbitrary, capricious and constituted abuses of discretion. The declaratory judgment claim requested a declaration that these two ordinances violated the United States and Colorado Constitutions on the grounds alleged in the first claim and on the additional grounds that the ordinances violated the appellants' rights of privacy, use and enjoyment of their property, and association "without any reasonable relationship to a rational state purpose" in violation of article II of the Colorado Constitution. The claim purportedly based on section 24–4–106 alleged that the Board's decision was "arbitrary, capricious and violate[d] the [appellants'] constitutional rights."[3]

Before oral argument, the parties submitted a joint stipulation of facts. The stipulation indicates that the appellants are

**2.** Pursuant to § 59–54(6), the Board may grant a six-month delay of enforcement under the following circumstances:

*Six-month delay of enforcement.* Whenever the department of zoning administration has issued an order to cease and desist from any use not authorized by this chapter, except as provided in subsection (5), above, the board, upon appeal, may find that the literal enforcement of the provisions will result in unnecessary hardship by reason of unique and exceptional circumstances including owner's physical condition, age, and/or other factors as deemed by the board to be unique or exceptional. In that event the board may order a delay, for a period of not to exceed six (6) months, of the enforcement of such cease and desist order. Upon expiration of any order delaying enforcement of such cease and desist order, the board may review, at a regular hearing before the board, an applicant's request for an additional six (6) months' extension and grant only one such extension should the board find that the conditions still exist. All such actions by the board shall be recorded in the office of the clerk and recorder of the city. Such stay shall not be a variance on the use of a premises, shall be personal to the applicant therefor and shall not be transferable.

Denver, Colo.Rev.Mun.Code § 59–54(6) (1982).

**3.** The review provisions of section 24–4–106, 10 C.R.S. (1982), apply to certain types of proceedings conducted by some state agencies. The record does not indicate the basis for the appellants' reliance on this portion of the Administrative Procedure Act for review of the Board's order. *See, e.g.,* § 31–23–307(1), 12B C.R.S. (1986) (decisions of boards of adjustment of municipalities subject to certiorari review by district court); § 59–56(a), Denver, Colo.Rev. Mun.Code (1982) (aggrieved persons may have decisions of Denver Board of Adjustment reviewed in the manner provided by rules relating to civil proceedings). The appellants' third claim, however, appears to seek the identical relief requested by the appellants' C.R.C.P. 106(a)(4) claim, and we consider only the C.R.C.P. 106(a)(4) claim.

related neither by blood nor marriage, that they operate the residence as a single housekeeping unit, that they are the sole occupants of the house and that neither would be able to live in the house without the financial contributions of the other. Following brief oral arguments, the district court entered a written order "declin[ing] to hold the ordinance unconstitutional" on the ground that it was "bound by the case of *Rademan v. City & County of Denver,* 186 Colo. 250 [, 526 P.2d 1325 (1974)]." The court made no findings of fact and stated no other conclusions of law. This appeal followed.

## II

The appellants assert that their rights to procedural due process of law under the fifth and fourteenth amendments to the United States Constitution and article II, section 25, of the Colorado Constitution were violated because the notice they received was defective. They also assert that their rights to equal protection of the law under both constitutions were violated because Denver's enforcement of the ordinances was arbitrary and capricious. Although the district court's order made no specific reference to these legal arguments, the record on appeal permits the conclusion that they are without merit.

The appellants acknowledged that they received notice of the August 14, 1984, Board of Adjustment hearing, but contend that the notice they received was defective because it indicated that the International Missionary Society of the Seventh Day Adventist Church was the owner of the property in question. The record contains only two documents which list the Seventh Day Adventist Church as the owner of the appellants' home. One is a "Neighborhood Organization Referral Form" which notified an entity described as the Rangeview Homeowners Association of the date, location and subject matter of the appellants' appeal. The other is a typewritten "zoning appeal application" listing the appellants as tenants of the property. With the exception of the designation of the owner, the application is substantially similar to a handwritten "zoning appeal application"

form which was filed on behalf of the appellants by their attorney.

The appellants appeared at the August 14, 1984, hearing and failed to object to the adequacy of the notice. The erroneous statements here challenged did not deprive the Board of jurisdiction and did not affect the appellants' ability to safeguard their interests. *See Sundance Hills Homeowners Ass'n v. Board of County Comm'rs,* 188 Colo. 321, 534 P.2d 1212 (1975); *Titus v. Zoning Bd. of Review,* 99 R.I. 211, 206 A.2d 630 (1965); *White v. Zoning Bd. of Adjustment,* 363 S.W.2d 955 (Tex.Civ.App.1962). Furthermore, by fully participating in the hearing and failing to object to any notice provisions, the appellants waived any right to later claim these defects constituted a violation of their due process rights. *Hendrickson v. Department of Revenue,* 716 P.2d 489 (Colo.App. 1986); *Mattingly v. Charnes,* 700 P.2d 927 (Colo.App.1985).

The appellants also assert that enforcement of the ordinances against them was arbitrary and capricious because other unrelated persons residing together in other properties in RS–4 residential zones have not been prosecuted by the Department. Discriminatory enforcement of zoning regulations may well result in a deprivation of equal protection rights. *Earl & Sons Tire Center v. City of Boulder,* 192 Colo. 360, 559 P.2d 236 (1977). However, persons asserting equal protection deprivations of this type must establish intentional discriminatory enforcement of regulations against them; the fact that some other individuals escape prosecution under an ordinance is insufficient to establish intentional selective enforcement of the ordinance. *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *May v. People,* 636 P.2d 672 (Colo.1981); *Parrack v. Town of Estes Park,* 628 P.2d 1014 (Colo. 1981); *Earl & Sons Tire Center v. City of Boulder,* 192 Colo. 360, 559 P.2d 236. The appellants offered no evidence to establish their claim of intentional discriminatory enforcement of the ordinance against them. To the contrary, they stipulated that the

Department proceeded with respect to the complaint initiating this proceeding in the same manner it responded to other complaints of alleged zoning violations.

The record does not support the appellants' claims that their rights to due process of law and equal protection of the law were infringed by the manner in which the ordinances were enforced against them. Consequently, to the extent the judgment of the district court denied the appellants' claims that the appellees' actions in enforcing the ordinances were arbitrary, capricious, and constituted abuses of discretion, or violated procedural due process and equal protection rights, the judgment is affirmed.

### III

The appellants also contend that the district court erred in holding that our decision in *Rademan v. City & County of Denver*, 186 Colo. 250, 526 P.2d 1325 (1974), required the conclusion that the provisions of these ordinances do not impermissibly impair their constitutional rights. We agree.

In *Rademan v. City & County of Denver*, 186 Colo. 250, 526 P.2d 1325, we held that then existing sections 612.1–3(1)(b) and 619.400 of the Code, which permitted only single unit dwellings in certain Denver neighborhoods, did not infringe upon the fourteenth amendment rights of two married couples and two individuals who asserted violations of their rights of privacy and their rights to associate freely with whomever they wished. The two appellants here assert that sections 59–2(131) and 59–102(1)(b) of the present Code deprive them not only of associational rights and their rights "not to marry," but also their rights as property owners to use their property as they desire. The number of plaintiffs in *Rademan*, their relationships, and the nature of the rights assertedly infringed are substantially different than the circumstances presented here.

In addition, *Rademan* relied extensively on the then quite recent decision of the United States Supreme Court in *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct.

1536, 39 L.Ed.2d 797 (1974). Since then, the Court has considered constitutional challenges to local zoning ordinances in *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion), and *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Those decisions must also be considered in assessing the effects of *Rademan* under the circumstances presented by this case.

These disparate factual and legal circumstances distinguish *Rademan* and render its authority instructive but not, as the district court held, binding. In the absence of any findings of fact by the district court in support of its decision, the case must be remanded for further consideration. The following discussion suggests the framework within which the appellants' claims should be evaluated.

### A

■ Denver is a home rule city. *See* Colo. Const., art. XX, § 6; *Lehman v. City & County of Denver*, 144 Colo. 109, 355 P.2d 309 (1960); *Colby v. Board of Adjustment*, 81 Colo. 344, 255 P. 443 (1927). As such, its zoning authority is governed by its own charter and ordinances. *Sellon v. City of Manitou Springs*, 745 P.2d 229 (Colo.1987); *City of Colo. Springs v. Smartt*, 620 P.2d 1060 (Colo.1980). Sections B1.13 and B1.14 of the Charter of the City and County of Denver delegate zoning power to the Denver City Council.

■ Implicit in this constitutional delegation of authority is the recognition that the City possesses broad legislative discretion to determine how best to achieve declared municipal objectives. *Nopro Co. v. Town of Cherry Hills Village*, 180 Colo. 217, 225, 504 P.2d 344, 348 (1972). Consequently, zoning ordinances are frequently upheld as valid exercises of police power to regulate matters of public health, safety and welfare. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Baum v. City & County of Denver*, 147 Colo. 104, 363 P.2d 688 (1961); *Colby v. Board of Adjustment*, 81 Colo. 344, 255 P. 443. Zoning decisions of

a municipal authority are presumed valid, *Board of County Comm'rs v. Mountain Air Ranch*, 192 Colo. 364, 563 P.2d 341 (1977); *Wright v. City of Littleton*, 174 Colo. 318, 483 P.2d 953 (1971); *Baum v. City & County of Denver*, 147 Colo. 104, 363 P.2d 688, and a party challenging the constitutionality of a zoning ordinance normally bears the burden of proving the asserted invalidity beyond a reasonable doubt, *Sellon v. City of Manitou Springs*, 745 P.2d 229; *Tri–State Generation & Transmission Co. v. City of Thornton*, 647 P.2d 670 (Colo.1982); *Holcomb v. City & County of Denver*, 199 Colo. 251, 606 P.2d 858 (1980); *Ford Leasing and Dev. Co. v. Board of County Comm'rs*, 186 Colo. 418, 528 P.2d 237 (1974); *Baum v. City & County of Denver*, 147 Colo. 104, 363 P.2d 688. The discretion of a municipality to promulgate zoning regulations is by no means absolute, however, but is subject to constitutional limitations applicable to all governmental legislative decisions. *See Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977).

In view of the tension inherent in these general principles, determination of the applicable test by which challenged zoning legislation is to be evaluated becomes a critical threshold issue. If an ordinance restricts a fundamental right or creates a suspect class, its constitutionality is to be measured by application of a heightened standard of inquiry into the purposes and effects of the ordinance. *See, e.g., San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *Tassian v. People*, 731 P.2d 672 (Colo.1987); *Lujan v. Colorado State Bd. of Educ.*, 649 P.2d

1005 (Colo.1982). An ordinance of this type will survive a constitutional challenge mounted on substantive due process or equal protection grounds only upon a showing by the government that the regulation is suitably tailored to serve a compelling state interest. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Rademan v. City & County of Denver*, 186 Colo. 250, 526 P.2d 1325 (1974). Zoning classifications which do not infringe upon fundamental rights or create suspect classifications are generally measured by the less demanding rationality standard. Under this standard, the legislation will be upheld if the purpose of the enactment is valid and the terms of the ordinance are rationally related to that governmental goal. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797; *Tassian v. People*, 731 P.2d 672; *People v. Velasquez*, 666 P.2d 567 (Colo.1983), *appeal dismissed*, 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 223 (1984); *Rademan v. City & County of Denver*, 186 Colo. 250, 526 P.2d 1325.[4] Because zoning ordinances by necessity limit the exercise of individual concepts of appropriate living arrangements, decisions as to which interpersonal relationships should be considered fundamental rights for purposes of constitutional protection are of the utmost importance.

B

In *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (hereinafter *Belle Terre* ), a landlord who had received an "Order to Remedy Violations" after renting his house to six

---

4. A third standard, that of intermediate review, has been employed by the Supreme Court to review a variety of other classifications which do not impinge a fundamental right or create a suspect class, but which infringe upon important interests. *See, e.g., Pickett v. Brown*, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983); *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *Kirchberg v. Feenstra*, 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981); *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459,

52 L.Ed.2d 31 (1977). Under this standard, the government must establish that a classification serves an important governmental interest and is substantially related to the achievement of those objectives. This court has previously utilized this intermediate standard of review in evaluating challenges to statutory classifications based on gender. *See Austin v. Litvak*, 682 P.2d 41 (Colo.1984); *R.McG. v. J.W.*, 200 Colo. 345, 615 P.2d 666 (1980).

college students challenged the validity of an ordinance restricting land use throughout the entire village to those related by blood, adoption or marriage. Three of the tenants joined the landlord's challenge. The ordinance also allowed use of land in the village by not more than two unrelated persons living together as a single housekeeping unit. The plaintiffs argued that the ordinance violated their rights of, *inter alia*, equal protection and travel. The Court rejected application of a heightened standard of review because it determined that the claims involved "no fundamental right guaranteed by the Constitution, such as the right of association, or any right of privacy," *Belle Terre*, 416 U.S. at 7, 94 S.Ct. at 1540 (citations omitted). Applying the rational relationship test, the Court concluded that the challenged restriction was reasonably related to a valid governmental purpose—furthering the family needs of the village. The majority opinion expressly rejected the argument that the ordinance displayed animosity toward unmarried couples living together by noting that the ordinance's definition of "family" included two unmarried people.

In *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), the Court applied a heightened scrutiny standard in holding unconstitutional a municipal ordinance under which a homeowner was convicted of criminal conduct for permitting her grandson to live in her household. The ordinance restricted occupancy of single family residential dwelling units to certain classes of family members related to the head of the household by consanguinity or marriage. Grandchildren of either a head of a household or the spouse of a head of a household were under certain circumstances defined as family members.[5] Other grandchildren of a head of the household, such as the grandson involved in the *Moore* case, who did not fall within this narrow classification were not deemed family members.

Four members of the Court applied a heightened scrutiny analysis and concluded that East Cleveland's ordinance violated the homeowner's substantive due process right to make choices concerning family living arrangements. *Belle Terre* and its conclusion that the rational relationship test governed the constitutional challenges asserted against that zoning ordinance was distinguished on the ground that the *Belle Terre* ordinance governed only unrelated individuals. The four justices determined that East Cleveland's regulation of what family members could live together only minimally furthered the stated objectives of the ordinance to reduce traffic and parking congestion, prevent overcrowding and avoid undue financial burdens on the city's school system. Justice Stevens, in a concurring opinion, found the ordinance unprecedented in its restriction of the fundamental right of property owners to decide who may reside on their property.

In *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the Court concluded that a zoning ordinance requiring an owner

---

**5.** The East Cleveland ordinance provided as follows:

"Family" means a number of individuals related to the nominal head of the household or to the spouse of the nominal head of the household living as a single housekeeping unit in a single dwelling unit, but limited to the following:

(a) Husband or wife of the nominal head of the household.

(b) Unmarried children of the nominal head of the household or of the spouse of the nominal head of the household, provided, however, that such unmarried children have no children residing with them.

(c) Father or mother of the nominal head of the household or of the spouse of the nominal head of the household.

(d) Notwithstanding the provisions of subsection (b) hereof, a family may include not more than one dependent married or unmarried child of the nominal head of the household or of the spouse of the nominal head of the household and the spouse and dependent children of such dependent child. For the purpose of this subsection, a dependent person is one who has more than fifty percent of his total support furnished for him by the nominal head of the household and the spouse of the nominal head of the household.

(e) A family may consist of one individual. *Moore v. City of East Cleveland*, 431 U.S. 494, 496 n. 2, 97 S.Ct. 1932, 1934 n. 2, 52 L.Ed.2d 531 (1977).

of a building designed to provide residential units for mentally retarded persons to obtain a special use permit violated equal protection rights of the handicapped persons who were its potential residents. The Court rejected the argument that mental retardation constituted a quasi-suspect classification requiring application of a heightened standard of review. Applying the rational relationship test, however, the Court concluded that the ordinance did not further any legitimate interest of the city and, therefore, denied equal protection of the law to the plaintiffs. In a concurring opinion, Justice Stevens observed that the Court's selection of standards by which to measure zoning legislation should not be viewed as rigid formulae but rather as efforts to articulate judicial responses to varying classification schemes. In a separate concurring and dissenting opinion, three justices articulated the view that a heightened scrutiny test should have been applied to invalidate Cleburne's ordinance on its face.

Our decision in *Rademan v. City & County of Denver*, 186 Colo. 250, 526 P.2d 1325 (1974), was issued prior to the decisions in *Moore* and *Cleburne*. In *Rademan*, the plaintiffs asserted violations of allegedly fundamental rights to privacy and to associate freely with whomever they wished. They also asserted a violation of equal protection rights because of the allegedly arbitrary distinction between familial and non-familial relationships contained within the ordinances. Relying on *Belle Terre*, we concluded that the plaintiffs' claims involved no fundamental rights and that the ordinance should be measured by the rational relationship standard. Because we concluded that the ordinance was reasonably related to its asserted legislative purposes of promoting family values and creating places free from congestion and over-population, we rejected the plaintiffs' claims.

As the decisions of the Supreme Court in *Belle Terre*, *Moore* and *Cleburne* reveal, assertions that a particular zoning ordinance violates due process or equal protection guarantees must be examined with great care to determine what standards are appropriate for measuring the challenged legislation. Our comment in *Rademan* that "[e]ven though the rights of freedom of association and of privacy are cherished rights, they must yield as we view the Constitution, to valid zoning regulations," *Rademan*, 186 Colo. at 254, 526 P.2d at 1327, may be read as merely recognizing that even fundamental rights may be regulated to some extent by appropriate legislation, so long as the legislation survives application of a heightened standard of review and is, therefore, constitutionally permissible. This dicta may also be read as merely reflecting the ultimate conclusion that the particular rights asserted by the *Rademan* plaintiffs were not impermissibly restricted by the challenged ordinances. The comment does not suggest that any zoning ordinance must be upheld automatically as a valid exercise of legislative authority in the face of any constitutional challenge. Each case requires careful assessment of the particular right asserted and specific conclusions regarding the purposes of the ordinance, no matter what constitutional standard is deemed appropriate.

C

■ When the appellants' allegations that sections 59–102(1)(b) and 59–2(131) of the Code violate their constitutional rights to due process of law are viewed from the perspective of this analytical framework, it is clear that the district court's order fails to provide sufficient guidelines for appellate review. Although a trial court need not make detailed findings and conclusions in every case, a final judgment must contain sufficient information to permit a reviewing court to determine whether proper legal standards were in fact applied. *Manor Vail Condominium Ass'n v. Town of Vail*, 199 Colo. 62, 604 P.2d 1168 (1980).

The district court here simply held that our decision in *Rademan v. City & County of Denver*, 186 Colo. 250, 526 P.2d 1325 (1974), required denial of the appellants' constitutional claims. We have already noted that *Rademan* dealt with a different living arrangement, that its comment con-

cerning the relationship between zoning ordinances and fundamental rights does not resolve the issue presented by the appellants, and that due process and equal protection challenges to municipal zoning ordinances demand careful analysis to determine the applicable constitutional standard. For example, while the appellants' general allegations of violations of rights of association, privacy and use of property may appear identical to the rights alleged to have been infringed in *Rademan,* closer examination of the appellants' claims suggests there are significant differences.

The appellants here appear to equate their particular rights of association and privacy to an asserted right to be free not to marry each other. The appellants also appear to assert a substantive due process right to use their property as they choose, although the extent of this right is not clear from the pleadings. They find support for their argument that the right not to marry is a fundamental right, requiring application of a heightened level of scrutiny to sections 59–102(1)(b) and 59–2(131) of the Code, in the decision of the Court of Appeals in *Beeson v. Kiowa County School District RE–1,* 39 Colo.App. 174, 567 P.2d 801 (1977). In *Beeson,* the court determined that the decision to create a marriage relationship is a fundamental right firmly grounded in the public policy of this state, as articulated by the General Assembly. *See* § 14–12–101, 6B C.R.S. (1987). The court then held that a school district policy prohibiting married students from participating in extracurricular activities served no compelling state interest and, therefore, improperly discriminated against married students on the basis of their married status, in violation of the equal protection clause of the fourteenth amendment to the United States Constitution. *Beeson* does not, therefore, supply direct support for the assertion that the right not to marry is a fundamental right.

Furthermore, even fundamental rights may in some circumstances be limited by governmental action. *See Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Rademan v. City & County of Denver,* 186 Colo. 250, 526 P.2d 1325 (1974). The absence of specific findings with regard to the extent the ordinances here challenged in fact abridge the appellants' asserted rights prevents any resolution of this issue at this time.

Findings concerning the purposes served by the ordinances are also instructive in determining to what extent the ordinances abridge the appellants' constitutional rights. The appellants argue that the ordinances were adopted to regulate a particular code of morality. The City indicates in its brief on appeal that the ordinances were designed to encourage family values. The general basis for adoption of the Code is, of course, the City's authority to "preserve and promote the public health, safety and welfare of the inhabitants of the city, and of the public generally, and to encourage and facilitate the orderly growth and expansion of the city." Denver, Colo.Rev. Mun.Code § 59–1 (1982). In view of this disagreement, the district court is in the best position to determine precisely what purposes these ordinance were designed to serve.[6]

The parties also dispute the extent to which the single unit dwelling provisions of the Code restrict the appellants' ability to own and occupy a residence in Denver. The appellants assert that because the definition of "single unit dwelling" found in section 59–2(131) of the Code applies to all residential zoning classifications, they could not own and occupy a single-family home anywhere in Denver. Although they acknowledge that certain residential zoning districts include as a "permitted home occupation" the "rooming and/or boarding" of a certain number of people,[7] they suggest

---

6. For example, the ordinances appear to permit a man and a woman, not married to each other, and perhaps even married to other persons, to reside in an R–4 zone if they happen also to be the father and mother of a child and the child resides with them.

7. Four of the residential zoning districts in Denver do not allow for permitted home occupations, including "rooming and/or boarding." *See* Denver, Colo.Rev.Mun.Code § 59–233 (1982) (R–X districts); § 59–222 (1982) (R–5 districts); § 59–87(4) (1982) (RS–2 districts);

such exception does not apply to their living arrangement. Even if a home occupation use exception might be available to the appellants in some other area of Denver, neither the district court's order nor the record indicates the extent to which permits for such a use are in practice available to persons such as the appellants or how difficult the application process might be. We, therefore, cannot determine how much of the City's residential dwelling areas remain inaccessible to the appellants. Factual findings concerning the pervasiveness of the asserted restrictions are, of course, highly relevant to any determination of whether the means chosen by the City to achieve its policy are constitutionally permissible. The district court is in the best position to make such findings.

## IV

The district court erred in concluding that our decision in *Rademan v. City & County of Denver*, 186 Colo. 250, 526 P.2d 1325 (1974), automatically barred the appellants' claims that sections 59–2(131) and 59–102(1)(b) of the Code violated their constitutional rights. The record does not support the appellants' assertion that the enforcement of the ordinance against them resulted in violations of their rights to procedural due process of law or equal protection of the law under the United States or Colorado Constitutions or that the appellees' actions in enforcing the ordinances against them were arbitrary, capricious or constituted abuses of discretion. However, in the absence of findings and conclusions concerning the extent of the rights asserted by the appellants, the purposes of the

ordinances, and the extent of the ordinances' prohibitions throughout Denver, further review of the district court's judgment is inappropriate.

For the foregoing reasons, the district court's judgment is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.

ERICKSON, J., specially concurs.

LOHR and VOLLACK, JJ., join the concurrence.

ERICKSON, Justice, specially concurring:

I specially concur in the judgment reversing the district court and remanding the case for further proceedings. I write separately because, as I view the record, it is only necessary for the district court on remand to determine the availability of other zoning districts where the appellants could cohabit as an unmarried couple in a single-unit dwelling. It is unnecessary for the trial court to make further findings concerning the nature and extent of the rights asserted by appellants and the purpose of the zoning ordinances.

I agree with the majority that our holding in *Rademan v. City & County of Denver*, 186 Colo. 250, 526 P.2d 1325 (1974), does not control this case. At the time *Rademan* was decided, we only had *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), to guide us. Since *Rademan*, the United States Supreme Court has considered constitutional challenges to zoning ordinances in *Moore v. City of East Cleveland*, 431

§ 59–103(4) (1982) (RS–4 districts). In R–3, R–O and R–4 districts, some home occupations are authorized upon the issuance of a permit, however, "rooming and/or boarding" is not one of those specifically enumerated. §§ 59–117(4) (1982), 59–177(4) (1982), 59–207(4) (1982). In R–3 and R–4 districts, "rooming and/or boarding" could conceivably be approved as an authorized home occupation under the broad §§ 59–177(4)(a)(11) and 59–207(4)(a)(10) catch-all home occupation clauses. The remaining residential districts in Denver do authorize "rooming and/or boarding" as a permitted home occupation under certain circumstances. *See* § 59–132(4)(a)(10) (1982) (allowing, upon is-

suance of a permit, the "rooming and/or boarding" of not more than two persons in R–1 districts if the single-unit dwelling does not contain more than one kitchen); § 59–147(4)(a)(10) (1982) (authorizing, upon issuance of a permit, the "rooming and/or boarding" of not more than two persons in R–2 districts); § 59–162(4)(a)(10) (1982) (authorizing, upon issuance of a permit, "rooming and/or boarding" of not more than two persons in R–2–A districts); § 59–192(4)(a)(10) (1982) (authorizing, upon issuance of a permit, the "rooming and/or boarding" of not more than two persons in R–3–X districts).

U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion), and *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In light of these cases, the determination whether minimal or strict scrutiny applies in a particular case is fact specific and depends solely on the nature of the right infringed by the zoning ordinance, *see City of Cleburne,* 473 U.S. 432, 105 S.Ct. 3249 (rational basis scrutiny applied to ordinance disparately impacting mentally retarded persons); *Moore,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (strict scrutiny applied to zoning ordinance restricting freedom of blood relatives to associate), and the degree to which the statutory scheme places disproportionate burdens on a suspect class, *see Village of Belle Terre,* 416 U.S. at 6, 94 S.Ct. at 1539 ("If the ordinance segregated one area only for one race, it would immediately be suspect...."); *Buchanan v. Warley,* 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917) (invalidating city ordinance barring a black from acquiring real property in a white residential area). According to the majority, "[f]indings concerning the purposes served by the ordinances are ... instructive in determining to what extent the ordinances abridge the appellants' constitutional rights." Majority opinion at 673. As I read this language and *Village of Belle Terre* and its progeny, the purpose of the zoning ordinance is only considered after a court ascertains the appropriate standard to review the constitutionality of the legislation. *See generally* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 596 (2d ed. 1983) (discussing application of strict scrutiny standard to review constitutionality of statutes).

I also agree with the majority that we cannot determine which standard of scrutiny applies since the magnitude of the ordinance's impact on the alleged rights of the appellants, Norma L. Dotson and Ysidro M. Zavala, is unclear. The parties do not agree, and based upon the record we cannot determine, whether the single-unit dwelling restriction, *see* Denver, Colo. Rev. Mun.Code § 59–2(131) (1982), prevents appellants from residing as an unmarried couple in a single-unit dwelling not only in an RS–4 district but anywhere else in Denver. It is unclear whether section 59–2(121), which authorizes the granting of permits allowing unrelated parties to reside in the same single-unit dwelling, applies to appellants' living arrangement. In addition, the joint stipulation entered into by the parties does not locate and delineate those areas zoned to enable appellants to acquire a permit under section 59–2(121). Accordingly, I agree that the case must be remanded for additional factual findings under C.R.C. P. 57 to identify and locate the different zoning districts in Denver and to determine for each zoning district the extent to which the zoning ordinances would permit appellants to cohabit as an unmarried couple in a single-unit dwelling.

In my view, this court may resolve the remaining issues without a remand to the trial court. The majority remands for a determination of both the nature and extent of the rights asserted by appellants and the purpose of the ordinances. As I read the record and the briefs, it is unnecessary to remand the case for a clarification of the nature and extent of the rights asserted by appellants. In their complaint, appellants attacked section 59–2(131) for the following reasons:

a. The ordinances deprive the plaintiffs of their rights of freedom of association and privacy by creating an unconstitutional, irrebuttable presumption that the plaintiffs' sharing of this house is immoral or somehow unsafe for the people of the State of Colorado, without showing a compelling state interest.

b. The ordinances deprive the plaintiffs of the use and enjoyment of their property without due process of law because the ordinance is both over- and under-inclusive. It therefore is not reasonably related to the achievement of a rational state goal.

c. The ordinance deprives the plaintiffs of their right to equal protection of the laws of the State of Colorado to protect their property because it singled them out for enforcement.

In their opening brief, appellants clarify their position by arguing that their rights

**676**

of association and privacy were violated because the zoning ordinance infringed upon their right to choose not to be married. They contend that an inherent element of a fundamental right to marry, *see Beeson v. Kiowa County School Dist. RE-1,* 39 Colo.App. 174, 567 P.2d 801 (1977) (decision to create marriage relationship is a fundamental right grounded in the public policy of Colorado), is the freedom to choose whether to exercise the right. According to appellants, by prohibiting cohabitation of unmarried couples, the zoning ordinance impinges upon that fundamental right. If the decision not to marry is not a fundamental right, they assert that an ordinance prohibiting unmarried couples from cohabiting in a single-unit dwelling is unconstitutional under a minimal standard of scrutiny. *See Israel v. Allen,* 195 Colo. 263, 577 P.2d 762 (1978) (statute prohibiting marriage between adopted brothers and sisters unconstitutional under minimal standard of scrutiny). In my view, the bases of appellants' constitutional attacks on the zoning ordinance are clear and do not require further factual clarification on remand.

Based on the record, it is also unnecessary to remand the case to determine the purpose behind the zoning ordinance. It is axiomatic that issues of statutory interpretation and the concomitant determination of a statute's purpose are questions of law which may be resolved by appellate courts. In this case, the plain language of the zoning ordinance and the purpose of the ordinance stated in Denver, Colo.Rev.Mun. Code § 59-1 unambiguously establish that the zoning ordinance is intended to promote and preserve traditional family values by encouraging families to live in certain zoning districts throughout the city of Denver. The zoning districts delineated for families prohibit commercial uses of property, thereby creating areas free from crowds, parking problems, and traffic congestion. *See Moore,* 431 U.S. at 500, 97 S.Ct. at 1936 (use of zoning ordinance to reduce overcrowding, traffic congestion, and parking problems is valid legislative purpose); *Village of Belle Terre,* 416 U.S. at 9, 94 S.Ct.

at 1541 (recognizing "family values" as valid purpose of zoning ordinance).

In my view, remanding the case to the district court for a determination of the nature and extent of rights asserted by appellants and the purpose behind the zoning ordinance is unnecessary and creates needless confusion for the parties and the trial court. Accordingly, I would reverse and remand for the sole purpose of determining the availability of other zoning districts where the appellants could cohabit as an unmarried couple in a single-unit dwelling.

I am authorized to say that Justice LOHR and Justice VOLLACK join in this special concurrence.